In re LANCE LUMBER CO.

(District Court, E. D. Pennsylvania.   June 30, 1915.)

No. 4666.

1. CORPORATIONS ⬯414—OFFICERS—POWERS.
    An officer of a corporation, with authority to issue its promissory notes, has no authority to issue notes for other than corporate purposes.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1640–1646; Dec. Dig. ⬯414.]

2. CORPORATIONS ⬯399—AUTHORITY OF OFFICERS—ISSUANCE OF NOTES—LIABILITY.
    Where a note of a corporation is issued by an officer acting with apparent authority and within the general scope of his powers and in the regular course of business, any one dealing with him may assume that the note is that of the corporation.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1588, 1602–1610; Dec. Dig. ⬯399.]

3. CORPORATIONS ⬯429—AUTHORITY OF OFFICERS—ISSUANCE OF NOTES—LIABILITY.
    Where a person dealing with an officer of a corporation knows, or is put on inquiry which will lead to knowledge, that the officer is acting without authority or in fraud of the corporation, the corporation is not bound by the act of the officer.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1720–1723, 1725; Dec. Dig. ⬯429.]

4. CORPORATIONS ⬯464—ACTS OF OFFICERS—ULTRA VIRES.
    The giving by a corporation of a note is not ultra vires, and becomes such only when the purpose in the giving of it is not for the use of the corporation, but in payment of the obligation of another, without consideration moving to it.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1820, 1821, 1828; Dec. Dig. ⬯464.]

5. CORPORATIONS ⬯432—ACTS OF OFFICERS—ULTRA VIRES.
    Where prima facie a note of a corporation has been issued without authority and in fraud of its rights, the holder in a proper case may be required to prove authority, or prove facts rendering the corporation liable; but where, on its face, the act is within corporate powers and in the regular course of business, such proof is not necessary to hold the corporation liable.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. ⬯432.]

6. BANKRUPTCY ⬯340—CLAIMS—ESTABLISHMENT—EVIDENCE.
    A seller sold lumber to an individual under the understanding that a corporation to be formed would take over the lumber and would be bound for the price as substituted buyer. The corporation was organized, and its notes were exchanged for those of the individual. The seller acted in good faith. The corporation renewed the notes from time to time,

and made partial payments by checks. A proposition to purchase the lumber from the individual by issuing to him certificates of stock was not carried out, and certificates were never issued. The seller at first declined to accept the notes of the corporation, but subsequently did so. *Held*, that, on the corporation being adjudged a bankrupt, the seller could establish a claim against it for the amount due on the notes.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. ⊚⇒340.]

In Bankruptcy. In the matter of the Lance Lumber Company, a bankrupt. On petition for review of order of referee denying the claim of the George F. Lance Company. Order reversed, and proceedings remanded.

J. Arthur Keppelman, of Reading, Pa., for petitioner.
Joseph R. Dickinson, of Reading, Pa., for trustee.

DICKINSON, District Judge.· This case presents the phenomenon observed in those ingeniously devised advertising signs which show the form of different letters and in consequence convey a different meaning according to the viewpoint of the observer. The metal or other substance of which they are composed is fixed and certain. The reading varies as the position of the observer changes. The real facts in this case, as distinguished from the deductions and inferences made and drawn therefrom, are these:

J. Cameron Lance bought of the George F. Lance Company a stock of lumber, for which he gave his promises to pay in the form of promissory notes. The purchase was made with the avowed plan in mind to form a lumber company, which, when formed, was to take over the stock of lumber thus bargained for and be substituted as the purchaser. Such a corporation was organized under the name of the Lance Lumber Company, and its notes were exchanged for those of the purchaser in accordance with the original plan. These corporate notes were executed by the same J. Cameron Lance as treasurer. They were renewed from time to time for reduced amounts. The payments made were by checks of the corporation, likewise signed by J. Cameron Lance as its treasurer, as long as he was connected with the company. The later notes and checks were signed by his successor in office. The transaction in all of its successive steps was made the subject of formal corporate action by the George F. Lance Company. The original sale was duly authorized and the novation of the debt accepted by resolution of its board of directors, which was duly entered upon its minutes. The stock of lumber remained stored on the premises of George F. Lance Company and was taken therefrom by the new company. The Lance Lumber Company having gone into bankruptcy, the George F. Lance Company presented the unpaid last note in this series as a claim against the bankrupt estate.

The meaning which the trustee extracts from these facts is this:

J. Cameron Lance, being indebted to George F. Lance Company, and being also treasurer of the Lance Lumber Company, fraudulently issued the notes and checks of the latter company in payment of his individual debt. The George F. Lance Company had knowledge of

this fraud, in that they knew the notes which they originally held were the debt of J. Cameron Lance, and that the corporation notes and the checks first given were signed by him as treasurer. This inference of fraud is based upon the further fact that the Lance Lumber Company passed a resolution to purchase this stock of lumber from J. Cameron Lance by issuing to him full-paid certificates for all the shares of its authorized capital stock and the negative fact that no corporate action appears by its minutes to have been taken by the Lance Lumber Company in assumption of the J. Cameron Lance note indebtedness.

The position taken by the bankrupt estate, and the argument in support of it deduced from these facts, is this:

The debt started as the debt of J. Cameron Lance. It was known to the holder of the notes to be his debt. The Lance Lumber Company could not, because it lacked the legal power so to do, assume and pay the debt of another. On the very face of the transaction this was what it was attempting to do, even if what was done had been in fact the act of the corporation. The real fact, however, is that what was done was not the act of the corporation, but was wholly the fraudulent act of one of its officers in issuing the notes of the corporation to pay his individual debt. The argument seeks, therefore, to place George F. Lance Company between the horns of this dilemma: If the transaction is taken for what it appeared to be, the corporation was attempting to do what it lacked the legal power to do. If the transaction is to be viewed as what it really was, then the giving of the corporation note was the fraudulent act of J. Cameron Lance, and of him alone. The argument meets the anticipated observation that a denial of the claim would under the circumstances work a hardship to George F. Lance Company by the statement that the latter had the means of the verification of the facts at hand, and if they chose to accept of the representations of J. Cameron Lance, without inquiry as verity, they are visited with the consequences. The inference is also intimated, if not expressly drawn, that George F. Lance Company knew that the corporate notes had been issued without authority, or through the fraud of its treasurer, because George F. Lance Company at first declined to accept the corporation notes in payment for the lumber and to give up the individual notes of J. Cameron Lance which it at the time held. The referee accepted this view and rejected the claim of George F. Lance Company.

From the viewpoint of the holder of the notes the situation is this:

The original sale as made contemplated the doing of the very thing which was done. The transaction on its face was in the regular course of business. The thing done was well within the legal power of the corporation to do. It was incorporated to engage in the lumber business. The purchase of lumber was in the regular course of that business. J. Cameron Lance had to the knowledge of the George F. Lance Company lumber to sell. The Lance Lumber Company had full legal power to purchase lumber and issue its notes in payment therefor. When, therefore, the notes were passed over to George F. Lance Company in apparent good faith and in the regular course of business, the latter was justified in like good faith in accepting them,

and, having given consideration, thereby acquired a valid claim against the maker of the notes. Whether a fraud committed upon the corporation by one of its own officers would or would not be a defense to paper regularly issued would turn entirely upon the good faith and knowledge of the person with whom the officer dealt, and as George F. Lance Company had acted in good faith and without notice of the fraud, and had parted with value, it is in a position to hold and enforce the payment of the corporate obligations received by it. The acts and conduct of the corporation for the length of time during which this series of notes was in process of part payment and renewal, both before and after the severance of all relations between J. Cameron Lance and the corporation had ceased, are further urged as strengthening the position of the claimant, and as evidence that the corporation had given the notes in purchase of the lumber which it had received.

[1-3] The decision of the case turns upon a question of fact, or of presumptions of fact, rather than upon any question of law. Whatever difficulty is presented arises, not out of the legal principles which may be involved, but in determining what principle is to be applied. The authority of the treasurer of a corporation to make and issue its promissory notes must be conceded. That an officer has no right, and in this sense no authority, to issue such notes for other than corporate purposes, is clear. When such obligations are issued by an officer acting with apparent authority, and within the general scope of his powers, and in the regular course of business, there is a presumption, and any one dealing with him has the right to assume, that the obligation is that of the corporation. When, however, the person with whom he is dealing has knowledge, or is put upon inquiry which would lead to knowledge, that the officer is acting without authority or in fraud of the rights of the corporation, the latter is not bound by what he does. These principles apply where the thing attempted to be done is in fraud of the rights of the corporation, as well as to cases in which the thing attempted to be done is beyond the power of the corporation to do in the ultra vires sense. It is to be observed, however, that in each class of cases the thing attempted to be done is in fact a fraud upon the corporation, or is in fact beyond the legal power of the corporation to do. These principles are supported by abundant authority, as the following citations will suffice to show: Mapes v. German Bank, 176 Fed. 89, 99 C. C. A. 609; Park Hotel v. Bank, 86 Fed. 742, 30 C. C. A. 409; Merchants' Bank v. Baird, 160 Fed. 642, 90 C. C. A. 338, 17 L. R. A. (N. S.) 526; Young's Estate, 234 Pa. 287, 83 Atl. 201.

[4, 5] It remains only to find the facts in the instant case to which the above principles are to be applied. What the corporation did here, if what was done was its act, was to issue its promissory notes in payment for lumber purchased. The giving of a promissory note by a corporation could not be said in any proper sense to be ultra vires. It becomes such in a subsidiary sense only when the purpose in the giving of the note is found to have been, not for its use and benefit, but in payment of the obligation of another, without consideration moving to it. This essentially involves the thought of a fraud upon the

corporation. Fraud is not a thing to be presumed, or to be so taken for granted as to require to be negatived by anticipation. If the prima facie fact is that the note of a corporation had been issued without authority and in fraud of its rights, then in a proper case the holder may be put to proof of authority, or of such facts and consideration as will render the corporation liable; but where on its face the act is within the corporate powers of the corporation to do, and in the regular course of business, and done by apparent authority, no occasion for such proofs arises. As applied to the facts of this case, if it had been shown, or fairly appeared, that the corporation had been defrauded, then George F. Lance Company might well have been called upon to prove the notes to have been issued with the authority of the corporation and for a consideration moving to it.

[6] This brings the whole inquiry down to the question of whether there was here any fraud committed upon the corporation. We have looked over and through the record for any suggestion that the claim of George F. Lance Company to be paid for its lumber is other than a just claim. The search has been barren of results. The good faith of the claim in itself seems to be admitted. The whole objection is centered and pivoted upon the point that the claim under the facts of the case is against J. Cameron Lance, and that there is no claim against the Lance Lumber Company, the payment of which can be enforced through the remedies provided by law. The acts of George F. Lance Company were in good faith throughout, and, if there was a fraud committed, it was under circumstances which furnished no criticism of them because of the deception which was practiced. They originally sold the lumber with the expectation that just what was afterwards done would be done. The formation of the Lance Lumber Company, its taking over the lumber, and the giving of its notes in payment therefor, was exactly what was looked for and expected to be done. Moreover, the acts and conduct of the corporation already alluded to in following up its notes with partial payments by checks, the later ones of which were signed by an officer of the company other than J. Cameron Lance, the storing of the lumber on the premises of George F. Lance Company, and the taking it therefrom by the Lance Lumber Company for its corporate purposes, were all acts which would have lured any one into the belief that the transaction was in fact what George F. Lance Company believed it to be. Whatever evidential weight these facts and circumstances legally have, they produce upon the mind a prima facie conviction that the lumber company acquired this stock of lumber, knowing it was to be paid for by them, and expecting to pay George F. Lance Company for it.

All there is to remove this impression is, first, the absence of any formal corporate act, evidenced by an entry upon its minutes, that it had undertaken to pay George F. Lance Company. This is in itself a mere circumstance, entitled to consideration, of course, but in itself of little weight. Another fact is that the lumber company by formal action authorized and directed the purchase of this lumber to be made in consideration of the issuance to J. Cameron Lance of certificates of stock representing all its authorized capital. It is this circumstance which lends color to the theory that the lumber company

had taken the lumber of J. Cameron Lance and paid him for it in certificates of stock, and that he had fraudulently sought to have them pay for it a second time by the assumption of his debt. It will not escape notice, however, that this circumstance loses all its persuasive force and absolutely all its evidential value, unless its offer to thus purchase the lumber was consummated by the carrying out of the proposition and its actual issuance of its stock. The search into the actual transaction is here rendered difficult by that curious inability which many people have to distinguish between a corporation and the individual members who compose it. Right here we undoubtedly have an instance of this phenomenon. J. Cameron Lance was evidently the moving spirit in the incorporation of this company. He was *it* in a most emphatic sense. The legal requirements of its formation were complied with by its capital stock being subscribed for by himself and others bearing the same name, and probably members of his family. It is, of course, clear that the subscribers to this stock had thereby obligated themselves to take the stock and to pay for it. The certificates, of course, could not properly issue until the stock had been thus paid for; but if and when paid for the stock belonged to the subscribers, and the corporation was without right, authority, or power to issue certificates to any one else.

Notwithstanding this, however, the corporation assumed this very right and power which it did not possess, and undertook without the authority or sanction of the subscribers to more than half the stock to issue certificates for the whole of it to J. Cameron Lance. If certificates had actually issued in accordance with and in pursuance of this resolution, the subscribers might be presumed to have waived their rights. At least no one else would have been in a position to have complained of the issue. There is, however, absolutely no evidence in this case that the certificates of stock were so issued, and the only evidence we have on the subject is the testimony of J. Cameron Lance, who positively denies that the stock was ever issued to him, and professes ignorance of this plan to purchase the lumber. All we know of the methods and practices of many people in the organization of corporations lends plausibility to the theory that the proposition itself was never a real one, but was merely a plan emanating from counsel, and indicating a method by which the stock might be issued. It further lends equal plausibility to the theory that the plan thus outlined never was carried out, and that there was substituted for it the plan of the corporation paying for the lumber by assuming the payment of the J. Cameron Lance notes, and issuing to J. Cameron Lance the few shares of stock which appeared to have been issued to him. This leaves the corporation in position to enforce the payment of the unpaid stock subscribed for.

The only other fact given us as a circumstance supporting the finding of fraud, and visiting knowledge of that fraud upon George F. Lance Company, is the letter written by George F. Lance Company to J. Cameron Lance, in which they at first declined to accept of the notes of the lumber company in payment of the notes which they then held. We cannot see in this fact the significance which the referee has given to it. On its face it is nothing more than an expression of

the disinclination which any holder of paper would have to give up the liability of a known individual maker for that of a corporation, the value of whose obligation was unknown to him. There is nothing in the case which militates against this view of this circumstance. Afterwards George F. Lance Company receded from this position and accepted the novation of the debt. It is not a violent presumption that they did so when it was explained to them that the corporation had taken over the lumber, and when they sold it would be in a position to pay for it.

We cannot escape the conviction that if George F. Lance Company had brought suit against the corporation on these notes, and it had been shown that the consideration was this stock of lumber which the corporation had received, that the lumber company had not only given its notes, but had renewed them from time to time, making partial payments by its checks, and thus given recognition of the debt after J. Cameron Lance had severed all connection with the corporation, and nothing appeared upon the other side except a proposition to purchase the lumber from J. Cameron Lance by issuing to him certificates of stock, which proposition was never carried out and the certificates never issued, and the letter above referred to, written by George F. Lance Company, and if the question of fact as to whether the corporation had assumed the payment for the lumber had been submitted to a jury, the verdict would have been for the plaintiff, and judgment on the verdict would have been entered by the court.

On the like evidence we feel persuaded of our duty to make a like finding, and the findings made by the referee and his order thereon are accordingly reversed, and the proceedings are remanded, with instructions to the referee to proceed in the case in accordance with this opinion and the order now made.