In re SCHULTZ DRY GOODS, CARPET & READY-TO-WEAR CO.

(District Court, W. D. Missouri, C. D.    October 27, 1916.)

No. 540.

BANKRUPTCY &⇒314(1)—CORPORATION—PROVABLE CLAIMS—DEBTS OF STOCK-HOLDERS.

Notes given for money borrowed by the maker to purchase the stock of a mercantile corporation, and so used, cannot be proved against the corporation in bankruptcy as against either prior or subsequent creditors, even though the maker thereby acquired practically all of the stock; nor is the position of the holder improved by the substitution of notes executed by the corporation without consideration, nor by the fact that former stockholders, from the proceeds of the sale of their stock, paid certain indebtedness of the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469, 471, 478, 483, 485; Dec. Dig. &⇒314(1).]

In Bankruptcy. In the matter of Schultz Dry Goods, Carpet & Ready-to-Wear Company, bankrupt. On petition of Marshall Field & Co. and other creditors to review decision of referee allowing certain claims. Reversed.

Pope & Lohman, of Jefferson City, Mo., for appellants.

David W. Peters and Calfee & Westhues, all of Jefferson City, Mo., for trustee.

VAN VALKENBURGH, District Judge. The question presented is whether notes aggregating $42,000 in favor of J. F. Moerschel, executed by Frank J. Linhoff, and one note for $8,000, payable on its face to Emma C. Linhoff, wife of Frank J. Linhoff, and signed by the latter, should be allowed against the bankrupt estate. The referee admitted these claims, and it is to correct this alleged error that this petition for review is brought to this court.

All the notes to Moerschel are signed by Frank J. Linhoff; that to Emma C. Linhoff is signed Schultz Dry Goods & Carpet Company, the predecessor of the present bankrupt. It is dated February 28, 1910, but Mr. Linhoff testifies that he executed it some time in the fall of 1914, after the Schultz Dry Goods & Carpet Company, as such, had ceased to exist; its charter having expired by limitation. This note, executed by Linhoff in the name of the Schultz Dry Goods & Carpet Company, was merely to replace an $8,000 note originally made by Linhoff to Moerschel, the father of Mrs. Linhoff, who gave this note to her as a present, and without further consideration. This note, therefore, occupies in law the same position as those presented by Moerschel himself.

In general, the statement of facts made by the referee in his certificate to the court, apart from the conclusions of law which he has drawn from them, may be accepted as correct. They are justified by the testimony, and there appear to be no material differences between

counsel as to such facts. Whether regarded as a purchase of corporate stock or as a purchase of the dry goods business, the notes evidence, in effect, a lending of credit, or loan by Moerschel to his son-in-law, Linhoff, individually, for that purpose. The transaction did consist in the purchase of the stock of the stockholders in the Schultz Dry Goods & Carpet Company; 238 shares being transferred to Linhoff and 1 share each to Mrs. Linhoff and her brother, Ernest C. Moerschel, who were elected directors and officers of the company, to succeed those whose stock had been purchased. Thus the corporate existence was maintained intact until the charter expired; then, for a brief period, the business was continued in the same name and without alteration in the situation, although in theory, the original corporation had ceased to exist.

The new corporation, the present bankrupt, was then organized upon the basis and theory of exact succession to the older corporation; the amount of capital stock and the shares and ownership remaining the same. Bankruptcy was sought, and the adjudication made of the latter corporation, as such, largely at the instance of the holders of these contested claims; so that no question now can be made in this action as to the validity of such corporate existence. The Schultz Dry Goods, Carpet & Ready-to-Wear Company is, in all respects, the successor of the Schultz Dry Goods & Carpet Company, took over all the assets, and is impressed with all the obligations of the former company; the relationship between that company and creditors, and all parties doing business with it, are the same as before, and we may consider and determine this case exactly as though no change in the corporate entity had been made.

Linhoff at the outset undertook to acquire this business from its then owners; he apparently had little or no money available for that purpose; he borrowed practically the entire amount in cash from banks, and gave notes for the residue to Mr. Schultz. Upon all these notes Moerschel was surety, and subsequently he was compelled, as he had probably all along intended, to pay these notes; and notes for like amounts were made by Linhoff to him in lieu thereof. Upon the face of the papers, as in fact, the relation of debtor and creditor was maintained throughout between Linhoff and Moerschel. The loan was made by Moerschel to Linhoff. The trustee, in effect, so finds, and there can be no question about this. Moerschel states the situation in a nutshell as follows:

"He [Linhoff] came up here and wanted to go in business, and he bought, it and I promised to help him out, and I had to stick to it. He loaned some money from the banks, and I went security. I signed the notes."

Claimants now urge that, because Linhoff practically owned the entire business, these personal obligations of his are chargeable against the company, and are entitled to participate in the distribution of its assets. Their counsel concede that, as against any creditor of the corporation existing at the time of the original transaction, these claims would be postponed; but they say that with respect to subsequent creditors, who became such after the existence of this so-called indebted-

ness and its alleged assumption by the corporation, these claims stand upon an equal footing. If allowed, they will absorb more than one-half of the dividends to be paid by the trustee. The immediate feeling of a chancellor, to whom such claims are addressed, is that they should not, in equity, be sustained. We turn, at once, for concrete reason and authority to confirm this feeling and impression. Such confirmation is not far to seek. It is founded upon the great weight of authority, and upon reasoning and a policy of the law which is impregnable. The notes, the obligation, the indebtedness, are those of Frank J. Linhoff as an individual. This relationship has been preserved throughout the entire transaction. It matters not what Moerschel may have thought, or may now think, as to the law; the fact is he loaned this money to his son-in-law, and took his son-in-law's notes therefor. He could not sue upon these notes and recover against another as the real maker. Sparks et al. v. Dispatch Trans. Co., 104 Mo. 531, 15 S. W. 417, 12 L. R. A. 714, 24 Am. St. Rep. 351.

It is claimed, however, that in this equitable proceeding such recovery may be had, and reliance is placed upon the decision of this court, as affirmed by the Court of Appeals of this Circuit, in Flower v. Commercial Trust Co., 223 Fed. 318, 138 C. C. A. 580, and Flower v. Central National Bank, 223 Fed. 323, 138 C. C. A. 585. But in those cases the Circuit Court of Appeals merely decided that the loan was actually made to the corporation itself, and for its benefit, and that the proceeds thereof actually entered into its business. In this case it quite as conclusively appears that the loan was not made to the corporation, nor for uses in its business, but to Frank J. Linhoff, to enable him to buy the corporate stock of the then holders. The money paid to those owners was taken by them and appropriated, of course, to their own personal use and benefit. If we were to allow this loan to Linhoff to become a charge upon the corporate property, it would have the effect, at once, without consideration to the corporation, to reduce its corporate assets to that extent, in this case to an unconscionable amount. It was one of these notes that was transferred to Emma C. Linhoff without consideration moving from her so far as the corporation was concerned; again, without consideration, it was transformed from a Linhoff note into a corporation note. She was a stockholder, officer, and director in that corporation. She has no higher right nor claim than had her grantor, Moerschel. There is present upon the minutes of the company no formal authorization or recognition of this act, and it would have been ultra vires and void as against creditors if there had been such.

But it is claimed that something like $12,400 did actually pass to the benefit of the corporation, because debts to that amount were extinguished out of the purchase price. The cases last above referred to are relied upon to sustain the allowance of this sum in any event; but this is not true where the loan is not made to the corporation, and where the funds find their way into its treasury incidentally and indirectly. In Flower v. Commercial Trust Co. and Central National Bank, supra, this court, in its opinion, said:

"It may also be conceded that, if a loan be made to a stranger, a third party cannot be held merely because the money has found its way indirectly into his hands through dealings between the borrower and himself."

And this statement was in no sense criticized or rejected by the Court of Appeals, but, on the contrary, the holding of this court was in all things confirmed, upon the broad ground that there the loan was, in fact, made to the corporation as such. Here it appears that Moerschel, in effect, loaned the money to Linhoff. Linhoff paid it over to the Schultzes, and the Schultzes, out of the money so received by them, did discharge indebtedness to the amount stated. Such a transaction does not alter the relationship incontestably created and existing between Moerschel and Linhoff.

But counsel urge that Linhoff in fact bought all this stock, and that this, therefore, became a one-man corporation; that such a corporation may assume the indebtedness of its individual owner, and even give security therefor. They concede, however, that the rights of then existing creditors could not be affected. In answer to this, it should be stated that technically the company never became a one-man corporation. Shares of stock in other stockholders were left outstanding, and the corporate existence was maintained. No notice was given to creditors, existing or prospective, of any such radical change in the make-up of this business enterprise. Reports made to them made no mention of this indebtedness, nor its source. The manner in which the notes were carried upon the books of either the bankrupt company or Moerschel, or both, if they were, in fact, so carried, does not affect the question. Creditors are not bound by the contents of such books, which they are neither bound nor presumed to examine in the absence of circumstances suggesting such a course.

But, even though this were a one-man corporation, by reason of the acquisition of the entire stock, the situation would not be different. It must be conceded, of course, that, as between Moerschel and Linhoff alone, the claim of Moerschel could be impressed upon any of Linhoff's property, and, perhaps, in this case, directly upon his interest in this company; but to say that this can be done as against third parties, who have, in good faith, dealt with the corporation as such, and extended credit upon the faith of its corporate existence and the legal deductions legitimately made therefrom, is to lose sight of the fundamental principles of Missouri corporation law. This transaction amounts indirectly, and in effect, to the assumption by a corporation of the indebtedness of one of its officers and stockholders for the purchase of its capital stock, and this, as decided by the Missouri court of last resort, is expressly prohibited. Hunter v. Garanflo, 246 Mo. 131, 151 S. W. 741. The rule in the federal jurisdictions is not otherwise. It applies to subsequent as well as prior creditors upon the strongest of reasoning. In re Haas Co., 131 Fed. 232, 65 C. C. A. 218. It is there said:

"The corporation, as a statutory person, with power to transact business, invite credit, incur obligations, and to discharge them, is an entity entirely distinct from its individual shareholders and from their power to transact business, invite credit, incur obligations, and to discharge the same. * * * So

long as the corporation is a going concern, there can be no lawful diversion of capital and assets that would diminish the security upon which continuing or future credit will be presumably based."

The general principle involved is thus stated:

"A corporation has no power to execute its notes, secured by a mortgage of its property, for individual debts of its stockholders incurred in the purchase of their stock, to the exclusion of creditors of the corporation, although their claims arose after the mortgage was executed and recorded."

And upon like principle such notes cannot participate in the distribution of corporate assets, to the displacement and impairment of the legitimate debts of the corporation, especially when contracted without knowledge of the existence of such claims. In Hunter v. Garanflo, supra, it was said that the provisions of the Missouri Constitution are—

"directed against the stockholders, and are primarily intended for the benefit of the public, by securing, as far as possible, the integrity of the fund for the protection of those who may deal with it, as well as those who may become the purchasers of its stock upon the faith of the representations made in the act of its incorporation."

The decisions of our own Circuit Court of Appeals are fully in accord with the principles thus announced. Mapes v. German Bank of Tilden, Neb., 176 Fed. 89, 99 C. C. A. 609; Park Hotel Co. v. National Bank, 86 Fed. 742, 30 C. C. A. 409. As bearing upon the question, also, see Merchants' Bank v. Baird, 160 Fed. 642, 90 C. C. A. 338, 17 L. R. A. (N. S.) 526; Trust Company v. Boynton, 71 Fed. 797, 19 C. C. A. 118; Smith v. Nelson Land & Cattle Co., 212 Fed. 56, 128 C. C. A. 512; In re Lance Lumber Co. (D. C.) 224 Fed. 598; Bowen v. National Bank et al., 94 Fed. 925, 36 C. C. A. 553; St. Vincent College v. Hallett, 201 Fed. 471, 119 C. C. A. 647. And as confirming the doctrine of In re Haas Co., 131 Fed. 232, 65 C. C. A. 218, supra, see, also, In re Romadka Bros. Co., 216 Fed. 113, 132 C. C. A. 357.

The case of In re New York Car Wheel Works (D. C.) 141 Fed. 430, is not in point, because there the indorsement by the corporation of the notes of another corporation was not an accommodation in a legal sense, but was based upon a valuable consideration, because the purchase might reasonably have been made, and undoubtedly was made, to protect the interest which it already had in the second corporation; the endorsing corporation at the time owned all the stock of the other, and therefore there was a valuable consideration moving to it for the endorsement made.

It follows, from what has been said, that the order of the referee in admitting the notes of Moerschel and Mrs. Linhoff for allowance was erroneous, and that order must be reversed, and the case remitted to the referee, with directions to disallow the same as against these petitioners and others similarly situated, and for other proceedings not inconsistent with the views herein expressed.

It is so ordered.