## GEORGE SPECHT v. MISSOURI PACIFIC RAILROAD COMPANY.[1]

January 19, 1923.

No. 23,113.

**Dominant corporation would be liable for injury from defective coupler, subsidiary company being merely an agent.**

 A corporation, organized to own and operate an extensive interstate railroad system, was unwilling to pay the large filing fee demanded by one state in which the system was to be operated. Accordingly, another smaller corporation was formed to take over the real property in that state, and it has since operated all trains in that state, each company receiving a proportion of the earnings and bearing a proportion of the expense of the system. All rolling stock belongs to the original corporation and by agreement it passes to the smaller corporation on passing the line into the state. By agreement, the lines are operated as continuous lines in close harmony and never in hostility. Time tables used ignore the smaller company. Plaintiff was

[1]Reported in 191 N. W. 905.

injured in the state of the smaller corporation, by reason of a defective coupler, used in interstate commerce on a car of the original company in violation of the Federal Safety Appliance Act. The report of the accident was made by a fellow employe on a blank of the original company. *Held,* the smaller corporation was a mere subsidiary agency of the original corporation, and that corporation is liable for the injury, if liability exists at all.

Action in the district court for Hennepin county to recover $40,-000 for injuries received while in defendant's employ. The answer alleged the injuries resulted from dangers and risks which were open, apparent, obvious and known to plaintiff and assumed by him. The case was tried before Leary, J., who when plaintiff rested denied defendant's motion for a directed verdict and when defendant rested denied its motion for a directed verdict, and a jury which returned a verdict for $17,500. Defendant's motion for judgment notwithstanding the verdict was granted. From the judgment entered in favor of defendant, plaintiff appealed. Reversed.

*George C. Stiles,* for appellant.

*Sanborn, Graves & Ordway,* for respondent.

HALLAM, J.

Plaintiff was injured while employed as a car inspector in the "Missouri Pacific" yards at Omaha, Nebraska. The injury is said to have been caused by the use of a defective coupler which would not couple on impact. Plaintiff sued the defendant, Missouri Pacific Railroad Company, a Missouri corporation, for damages, founding his action upon the Federal Safety Appliance Act, and recovered a verdict. The trial court granted judgment for defendant notwithstanding the verdict, on the ground that the liability, if any, was that of the "Missouri Pacific Railroad Corporation in Nebraska," a Delaware corporation. Plaintiff appeals. The facts are as follows:

The Omaha yard was for some years the property of the old Missouri Pacific Railway Company, which operated in Nebraska and other states. This corporation passed into the hands of receivers. Defendant corporation was organized with an authorized capital of

$300,000,000 to take over its property and business. The state of Nebraska demanded of the new corporation, as a prerequisite to the transaction of business in that state, a percentage of the total capitalization of the corporation. The percentage amounted to $300,000. To escape payment of this large fee, the Delaware corporation was formed with a capital stock of $4,000,000. This corporation was permitted to do business in Nebraska on payment of a fee of $40,000. One witness stated that the capital stock of the Delaware corporation was based on mileage represented in the state of Nebraska. It appears, however, that Nebraska has more than one-twentieth of the mileage of the whole system, yet only one seventy-fifth of the capital stock.

The Delaware corporation took over the real property of the system within the state of Nebraska. Defendant, however, owns the rolling stock used over the whole system, Nebraska included. By agreement between the two corporations, possession of every unit of railway equipment operated in Nebraska is deemed to pass to the Nebraska corporation as soon as it passes over the state line into Nebraska, and the passage of such possession is deemed to carry with it "the possession of all persons whosoever in actual charge" thereof, and said unit so brought into said state becomes the unit of the Nebraska corporation, and all persons in charge thereof become the employes of the Nebraska corporation.

Defendant owns all of the stock of the Delaware corporation. The agreement between them provides that the lines of each with branches, are operated "as a continuous line or lines of railroad"— the rates applicable to all through business, over both roads, shall be low enough to meet competition, all traffic beyond the limit of the lines of one, the routing of which is not designated, or which the carrier may control, shall be turned over by one to the other if to a point which may be reached by or via the lines of the other. The lines of each are to be "operated in close harmony with and never in hostility or antagonism to said lines of railroad of the other."

The earnings of the two companies are kept separate. Each corporation receives a proportion of all charges for transportation and pays a proportion of the expense of operation, including wages of

employes, and plaintiff in this case received his pay from the Delaware corporation.

The two corporations have different officers and directors except that they have one common director. The board of directors of the Delaware corporation operating the Nebraska lines meets at defendant's offices in St. Louis.

Defendant issues time tables under its own name covering the whole system including all Nebraska lines. In those time tables the Delaware corporation is not mentioned at all. In the official railway guide, a standard publication of railway time tables and information, the Delaware corporation is not mentioned. Each company issues its own bills of lading, but passenger tickets are issued for carriage over both roads in the name of defendant without mention of the name of the Delaware corporation.

The accident in this case happened in the yards at Omaha, Nebraska, but the report of it, made by a fellow employe, was made on a blank of defendant. The name of the Delaware corporation does not appear.

Plaintiff testified that he was employed by the Missouri Pacific Railroad Company. Other employes about the Omaha yards gave similar testimony. At least one of defendant's witnesses testified that he was "employed by the Missouri Pacific Railroad Company * * * down in the Omaha yards." This is important chiefly as showing that those in the employ of the two corporations recognized no line of demarcation between them, but regarded the defendant, the dominant corporation, the only real entity.

The fact that the Missouri corporation owns all the stock of the Nebraska corporation does not, in itself, render the latter corporation its agent, nor make it liable for that corporation's obligation. Stone v. Cleveland, C. C. & St. L. Ry. Co. 202 N. Y. 352, 95 N. E. 816, 35 L. R. A. (N. S.) 770; Peterson v. Chicago, R. I. & Pac. Ry. Co. 205 U. S. 364, 27 Sup. Ct. 513, 51 L. ed. 841; Atchison, T. & S. F. R. Co. v. Cochran, 43 Kan. 225, 23 Pac. 151, 7 L. R. A. 412, 19 Am. St. 129.

We must, however, take into consideration all of the facts in the case. The relation was similar to that in the following well-considered cases.

Lehigh Valley R. Co. v. Dupont, 128 Fed. 840, 64 C. C. A. 478. Defendant, Lehigh Valley Railroad Company, a Pennsylvania corporation, acquired control of railroads of several other corporations through ownership of the capital stock of these corporations, the whole constituting what was known as the Lehigh Valley Railway System, and forming, with defendant's own lines, a continuous main line with various branch lines. One of the roads thus acquired was the Easton & Amboy Railroad. Deceased was killed at a station on the Easton & Amboy Railroad by a train of that road, while standing on a platform awaiting a train. His passage ticket would take him to a point on defendant's road. The entire stock of the Easton & Amboy was owned by the Lehigh Valley Terminal Railroad Company, and the entire stock of the terminal company was owned by defendant. The directors of the terminal company were elected by the vote of defendant, and the officers and directors of the Easton & Amboy were elected by the vote of the terminal company. The freight and passenger business between the two corporations was done upon a mileage basis, the charges prorated, each one receiving its proportion. There was evidence that defendant had held itself out to the public as the apparent carrier operating the Easton & Amboy. The same person was superintendent of both roads, the same person general passenger agent of each. In the advertisements and time tables of defendant the Easton & Amboy road had always been treated as a part of the railroad of the defendant. The cars, conductors and employes upon the Easton & Amboy were those of defendant, the cars being lettered in the name and the employes wearing its initials on their uniforms. The title to the franchises, privileges and property of the Easton & Amboy was vested in that corporation and the railroad upon which deceased was killed was operated and maintained financially and physically by that corporation. But the potential and ultimate control of all its property and business affairs was lodged in the defendant, and this control was exercised as completely and as directly as the machinery of corporate organisms would permit. The court said [ at 128 Fed. 845, 846]:

"Where the lines of several railroad corporations are conducted as a single system for the purposes of the traffic between different points originating upon either, the corporations may constitute themselves a partnership for the business of such traffic; and when they do, although the general management of each road is retained by the corporation owning it, the several corporations are, as to such business, partners and liable upon the principles of the law of agency. When a relation of joint and several agency exists in a system of dominant and subordinate carriers, the dominant carrier is liable for all breaches of obligation by any of the other constituent carriers in the performance of a contract made by it for the transportation of passengers or freight * * *. Especially should the dominant corporation be regarded as the principal and the constituent corporations as agents when, as in this case, the dominant corporation ultimately derives all the profits and incurs all the losses arising from the traffic originating on any of the lines."

In Lehigh Valley R. Co. v. Delachesa, 145 Fed. 617, 76 C. C. A. 307, the same defendant was held liable for an injury to an employe of a firm of stevedores while unloading iron from a car standing on the track and dock operated by the Easton & Amboy Company, by the negligence of men in charge of the dock and train, who were employes of the Easton & Amboy Company. The court referring to the Dupont case said [at page 619]: "It is argued that the principle of that case is not applicable here, because the question there was as to the liability of the defendant to a passenger, while here it is as to its liability to a person as to whom it had no contractual liability" but, the court said: "We discover no difference in principle between the two cases." The court added: "The question was not one of practical importance to the defendant, but merely whether it should be called upon to pay out of one or another of its several purses."

In Naam Looze Vennoot Schop, S. S. Willem Van Driel, Sr. v. Pennsylvania R. Co. et al., 252 Fed. 35, 164 C. C. A. 147, the negligent burning of a grain elevator caused damage to vessels loading thereat. The Northern Central Railroad Company had constructed

the elevator and had leased it for operation to an elevator company. The Northern Central owned all the stock of the elevator company, except a few shares necessary to qualify the latter's officers. The stockholders and directors of the elevator company held their meetings, but the potential and ultimate control of its property and business affairs was exercised by the railroad company as completely and directly as the machinery of corporate organisms would permit. The Northern Central leased all its property and franchises to the Pennsylvania Railroad Company. The terms were such that thereafter the Pennsylvania Railroad Company maintained the same relationship to the elevator company that the Northern Central did before. It was held, reversing The Willem Van Driel Sr. The Welbeck Hall, 242 Fed. 285, that the Pennsylvania Railroad Company was liable for the negligence of the elevator company. See also Luckenbach S. S. Co. Inc. v. W. R. Grace & Co. Inc. 267 Fed. 676.

In Pennsylvania Co. v. Rossett, 116 Ill. App. 342, the Pennsylvania Railroad Company was held liable to a person who had sustained personal injury by reason of negligence in the operation of railway cars of employes in the immediate employ of the so-called Pan Handle road. The relations of that road to the Pennsylvania Company were similar to those of the Delaware corporation to the defendant in this case.

If we follow these decisions we must hold defendant liable. While there is no Federal question involved, and Federal decisions are not therefore controlling, still they are of persuasive force in cases which, like this, involve the relation of component parts of interstate railroad systems. The case before us is stronger in plaintiff's favor, in one particular, than any of the cases cited, that is, that in this case the defendant owned all the rolling stock used by the Delaware corporation, and plaintiff's injury arose out of a defective coupler used in violation of the Safety Appliance Act, on a car which was owned by this defendant. The reasoning of the decisions cited seems to us sound, and for that reason we follow it.

Plainly, this whole railroad system is one entity. The Delaware corporation is a mere subsidiary agency of the defendant for carrying on the Nebraska section of this composite whole. The "poten-

tial and ultimate control" is exercised by defendant as completely and directly as the machinery of corporate organisms permit. On the organization of defendant there was apparently no thought except that it should operate the whole system. The separation was not for purposes of operation, but merely to effect the saving of part of the state filing fee. Whether there be technical partnership or not, it is clear that a relation of principal and agent exists between the dominant and subordinate corporations, and that the dominant corporation is liable for all acts or omissions of the subordinate corporation in carrying out the general plan of operation.

Judgment reversed.