## EDWARD FINCH CO. v. ROBIE.

## FLORENCE REALTY CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit.
April 19, 1926.)

Nos. 7164, 7165.

Bankruptcy ⟨⇒⟩308—Corporations, whose stock was issued for property turned over by bankrupt to corporations, and of which bankrupt retained complete control, held but instrumentalities of bankrupt, and not entitled to assert claims against bankrupt's estate based on ownership of his notes.

Corporations, to which no one except bankrupt contributed anything, and whose stock was issued for property turned over by him to corporations, the bankrupt retaining complete control and management of all such properties and using them as a means of carrying on his own business, and using funds derived from loans or sales of properties without objection from any one, held not good-faith corporations, but agencies or instrumentalities of bankrupt, and hence not entitled to assert claims against bankrupt's estate based on his notes held by them.

Appeals from the District Court of the United States for the Fifth Division of the District of Minnesota; William A. Cant, Judge.

In the matter of Edward Finch, bankrupt. From judgments dismissing claims, opposed by E. G. Robie, trustee, the Edward Finch Company and the Florence Realty Company, claimants, appeal. Affirmed.

W. K. Montague, of Virginia, Minn. (Boyle & Montague, of Virginia, Minn., on the brief), for appellants.

Arthur R. Smythe, of Duluth, Minn. (Middaugh, Smythe & Wheeler, of Duluth, Minn., on the brief), for appellee.

Before STONE, KENYON, and BOOTH, Circuit Judges.

KENYON, Circuit Judge. Edward Finch was in January, 1924, adjudged a bankrupt in the United States District Court for the District of Minnesota, Fifth Division. Appellee is the trustee in bankruptcy. Appellant in No. 7164, Edward Finch Company, filed in the bankruptcy proceeding a claim of $6,007.87, evidenced by four promissory notes of varying amounts, signed by Edward Finch (hereinafter designated the bankrupt); the notes purporting to have been given in 1920 and 1921. Appellant in case No. 7165, Florence Realty Company, also filed a claim for $29,627.64, evidenced by two promissory notes, both given July 1, 1921, by Edward Finch to the Florence Realty Company in the respective amounts of $16,900 and $12,727.64. Upon hearing be-

fore the referee in bankruptcy, written objections to the claims having been filed by the trustee, they were disallowed. Claimants petitioned for a review of the referee's order by said United States District Court. Additional testimony was taken in that court. The referee held, and the trial court sustained his holding, that the claimants had both failed to establish facts which would justify a court of bankruptcy in allowing the claims; that they were neither legal nor equitable obligations; that the use of the corporations was a mere subterfuge and was intended from the very first to be for the benefit of the bankrupt rather than the stockholders. Judgments were entered dismissing the claims. These appeals resulted.

Appellants contend the corporations were formed under the laws of the state of Minnesota, and the real estate and other property legally transferred to them, that there was no evidence that the transfers were made with intent to defraud, and that there were no outstanding debts when the property was transferred.

Appellee's contention is that these alleged corporations were not in fact nor in law corporations; that the bankrupt never intended to part with, and never did part with, the property purported to have been transferred to them; that the transfers of shares of stock were never consummated; that the bankrupt continued to treat the property as his own, and that the corporations acquiesced therein; that the so-called corporations were in fact the individual Edward Finch, and that he cannot be heard to say that they loaned money to him; that the claims presented are merely claims of Edward Finch against his own estate.

Both cases being similar as to the facts, we deal with them in one opinion. The bankrupt for many years was engaged, first in the saloon business, and later in the drug business, in St. Louis county, Minn. He was married and in 1915, which was approximately the time he organized both corporations under the laws of Minnesota, he had two children 5 and 11 years of age, respectively. The Florence Realty Company had a capital stock of $20,000, divided into 200 shares of the par value of $100 each. The incorporators were Mr. Finch, Mr. Boyle, and Mr. Britts. The bankrupt owned 198 shares of the stock. One share was issued to Mr. Boyle and one to Mr. Britts in order to qualify them to serve as officers of the corporation. The equity of bankrupt in a building in Virginia city, worth approximately $45,-000, was turned over to this corporation. The equity was a contract of purchase, on which there was a balance to be paid of $25,000, and comprised its entire assets. Bankrupt claims he transferred his stock to his two sons, but the same was not delivered to them or to any guardian for them. In 1920 or 1921 bankrupt made a loan on the building of $16,500 through the instrumentality of the Florence Realty Company. He had this money deposited to his personal account and used it. The sole purpose of the loan was to turn the money over to himself. Later he sold the building, took the money received (approximately $12,726.64 above the indebtedness), and used it for his own purposes. The notes were not given at the time of the alleged loans. Some question arising as to income taxes, auditors went over the books of the Florence Realty Company and also of the Edward Finch Company, and as a result thereof the plan of giving the notes now constituting the claims of the Florence Realty Company was devised.

The Edward Finch Company was organized about the same time as the Florence Realty Company. Its capitalization was $10,000—one hundred shares of the par value of $100 each. Mr. Finch received 98 shares, Mr. Boyle and Mr. Britts one share each; the two latter shares being merely qualifying shares to enable the corporation to have officers. Mr. Finch claims to have transferred this stock to his wife, with the exception of one share, which he retained. He transferred to the Edward Finch Company the balance of his property. This company took over his saloon business, stock of liquors, fixtures, etc. He managed its business, drew a salary which he himself fixed, and apparently took from the returns of the business whatever he desired. After St. Louis county became dry in 1918 under the local option law, bankrupt went into the drug business, which he claims to have carried on personally, but which seems to have been conducted in the name of the Edward Finch Company. He also engaged in speculation in whisky warehouse receipts, and was interested in a soft drink parlor.

At the time of the organization of these two corporations, Mr. Finch owed no money except what was due from him upon the contract of purchase for the building, which contract was assumed by the Florence Realty Company. None of the claims filed in the bankruptcy matters were then in existence. Bankrupt claims some books of account, consisting principally of a loose leaf ledger,

were kept for the Florence Realty Company. It is not clear from the record that any books were kept by the Edward Finch Company.

These facts, with others gathered from the record, create the impression that these were peculiar and unusual corporations. No one except the bankrupt contributed anything to them. The other two stockholders united with him in forming the corporations paid nothing for their stock. The stock in the Florence Realty Company was never delivered to the sons, nor do we think the stock in the Edward Finch Company was delivered to his wife. All shares in these corporations were issued for real and personal property belonging to the bankrupt, and turned over by him to the corporations. He retained the complete control and management of all these properties, and used them as a means of carrying on his own business. He managed them, took the funds derived from loans or sales of the properties, and used them as his own, without objection from any one. The corporations, as such, seemed to have nothing to do with any matters whatsoever. Apparently there were no corporation records or minutes of meetings of the boards of directors, if such meetings ever took place. The Florence Realty Company never had a bank account, nor did the Edward Finch Company after the saloon business terminated. There is no record of the indebtedness now claimed, except the notes which were in part given on the spur of some attempt on the part of the government to collect income taxes. If either corporation ever had any corporate life, it was extinct long prior to the bankruptcy proceedings.

It is quite apparent that these were not such corporations as are depicted by Chief Justice Marshall in the famous Dartmouth College Case as having the characteristics of immortality and individuality. They had neither. The corporations and the bankrupt were one and the same. Their affairs were so intermingled and commingled that no individuality or corporate entity is discernible. It is doubtless true that legal forms were followed in their formation, and that they were technical paper corporations under the laws of Minnesota, but we are satisfied they were nothing more than "dummy" or fictitious corporations, never exercising any corporate functions.

Courts do not hesitate to look through the shell of corporate identity to get at the real purpose of the association of individuals. The illuminating light of facts here clearly shows that the real purpose of the bankrupt was to organize and use the corporations as his agencies or instrumentalities to carry on his business and hold his properties as a protection to him in the future if his speculations or business went wrong. There was no intention to serve the stockholders. The transfers of property were not intended to be out and out transfers with change of ownership, but were part of the arrangements for his control thereof through the instrumentality of the corporations.

Questions have frequently arisen where one corporation seeks to carry on a business through another subsidiary corporation, which is somewhat analogous to the situation here where Finch as an individual endeavored to protect his own interests by the organization of corporations to hold his properties and carry on his business as his instrumentalities or agents.

This court said, in Wabash Ry. Co. v. American Refrigerator Transit Co. et al. (C. C. A.) 7 F.(2d) 335, 343: "If corporations carry on part of their business through subsidiary companies, it makes little difference what such companies may be called; there is no particular divinity surrounding the term 'corporation.' The courts will look through the form to get at the real intent of the association of individuals or corporations forming the organization, and, if rights of third parties have not intervened, will give effect to the real purpose of the organization in order to promote square dealing and effectuate justice."

In McCaskill Co. v. United States, 216 U. S. 504, 515, 30 S. Ct. 386, 391, 54 L. Ed. 590, the court said: "A growing tendency is therefore exhibited in the courts to look beyond the corporate form to the purpose of it and to the officers who are identified with that purpose."

In the Willem Van Driel, Sr., Case, 252 F. 35, 39, 164 C. C. A. 147, 151, the court said: "It would be impossible to imagine a relationship between corporations where the subsidiary corporation was more completely under the control of the dominant corporation. The elevators were constructed and operated merely as a facility to the business of the railroad company. Applying the language of Judge Wallace in Lehigh Valley Railroad Co. v. Du Pont [Dupont] 128 F. 840, 64 C. C. A. 478, the potential and ultimate control of all its property and business affairs of the elevator company was lodged in the railroad company, and this control was exercised as completely and as directly as the machinery of corporate organisms would

permit. Such complete dominance and control by the railroad company made the elevator company its mere puppet."

In Re Rieger, Kapner & Altmark (D. C.) 157 F. 609, 613, the court said: "The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties or to circumvent fraud."

From Anthony et al. v. American Glucose Co., 146 N. Y. 407, 413, 41 N. E. 23, we quote: "We have of late refused to be always and utterly trammeled by the logic derived from corporate existence where it only serves to distort or hide the truth."

From 1 Cook on Corporations (6th Ed.) pp. 31 and 32, c. 1, § 6: "Property acquired by and in the name of a 'dummy' corporation may be held to be subject to a mortgage executed by the owner of such 'dummy' corporation."

Surely the corporate existence here was merely an effort "to distort or hide the truth." Bankrupt is in the situation of filing his own claims in a bankruptcy proceeding against his own property.

Under the circumstances of these cases, it would be unconscionable for a court of equity to permit the assets of the bankrupt to be diminished by the allowance of these claims. The only person insisting upon such allowance seems to be, not any of those whom the bankrupt claims are the owners of the stock, but the bankrupt himself. The decision of the trial court takes nothing from the wife or children. They were mere figureheads, having nothing of substance in the corporations. They are not urging allowance of the disputed claims. The property always was in fact the bankrupt's.

The question of fraud is not important, in view of our conclusions. While it is insisted there was no actual fraud as to creditors because the claims now filed were not in existence when the transfers of the property were made, it might be suggested with some force that the entire scheme and purpose of the organization and carrying on of these corporations, eventually to result in wrong to others, is so lacking in good faith as to constitute a legal fraud. However, it is unnecessary to decide that question.

Our holding is based on the general proposition that the corporations were not good-faith corporations, but were in fact agencies or instrumentalities of the bankrupt; that they should be treated as mere creatures of his, and their assets as his assets. The al-

leged claims should not be allowed in this bankruptcy proceeding. The following authorities bear on the questions here considered: McCaskill Co. v. United States, 216 U. S. 504, 30 S. Ct. 386, 54 L. Ed. 590; Southern Pacific Terminal Co. v. Int. Comm. Commission, 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310; United States v. Delaware, Lackawanna & Western R. R. Co., 238 U. S. 516, 35 S. Ct. 873, 59 L. Ed. 1438; Chicago, M. & St. P. Ry. v. Minneapolis Civic Assn., 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229; In re Schultze Dry Goods, Carpet & Ready to Wear Co. (D. C.) 236 F. 425; Lehigh Valley R. Co. v. Dupont, 128 F. 840, 64 C. C. A. 478; Specht v. Missouri Pac. R. Co., 154 Minn. 314, 191 N. W. 905; 2 Cook on Corporations (6th Ed.) p. 1983, c. 39, §§ 663 and 664; 1 Thompson on Corporations (2d Ed.) c. 2, § 37; Seymour v. Spring Forest Cemetery Association et al., 144 N. Y. 333, 39 N. E. 365, 26 L. R. A. 859.

The judgment of the trial court is affirmed.