EDWARD F. BOWERS v. GRAND INTERNATIONAL
BROTHERHOOD OF LOCOMOTIVE ENGINEERS.
JAMES W. DeBAR v. SAME DEFENDANT.
P. F. McINTOSH v. SAME DEFENDANT.[1]

January 13, 1933.

Nos. 29,185, 29,186, 29,187.

*Morphy, Bradford, Cummins & Cummins,* for appellant.
*Moonan & Moonan,* for respondents.

HILTON, J.

These three actions were considered together in the lower court.
In each defendant appeared "specially and not generally, and for

[1] Reported in 246 N. W. 362.

the sole purpose of questioning the jurisdiction of the court over the person of said defendant, and for the purpose of having the pretended service of the summons and complaint on said defendant adjudged null and void and in all things vacated and set aside." A notice of motion was served in each, supported by petition and affidavit. There was a counter affidavit on behalf of each plaintiff. The motions of defendant were in all things denied, and appeals taken to this court. For the purpose of the appeals the cases were here consolidated.

These actions were to recover from defendant (hereinafter for convenience referred to in the impersonal singular) as damages an amount paid by plaintiffs for certain bonds of the B. L. E. Realty Corporation. The claim in each case, broadly, was that the bonds were worthless; that false and fraudulent representations were made by defendant in regard thereto with the intent to deceive plaintiff; that plaintiff believed and relied thereon to his damage in the amount so invested.

Defendant is a voluntary unincorporated association composed of more than 75,000 locomotive engineers residing throughout the United States and Canada, of whom about 5,000 reside in Minnesota. Individual members of the defendant are associated together in local lodges known as divisions. Each local division elects its own officers, who are not, as such, officers of defendant. The officers of the defendant are elected in triennial conventions by delegates elected by its membership. The declared purposes and objects of defendant are primarily to combine the interests of locomotive engineers, elevate their social, moral, intellectual, and financial interests, and promote their general welfare and the welfare of their families and dependents.

Plaintiffs McIntosh and DeBar, during the times mentioned in the complaints, were members in good standing of the defendant. Plaintiff Bowers is not such a member as far as the record discloses. The amounts paid for the bonds by plaintiffs were, in the order in which they are above named, $1,000, $11,500, and $600.

628

Plaintiffs sought to obtain jurisdiction of the defendant by service of summons and complaints upon one G. N. Wyman of Waseca, Minnesota, a locomotive engineer residing therein, who at the time of the attempted service was chief engineer (head) of division No. 9. He was also an associate and member in good standing of defendant. Wyman at once sent the summons and complaint in each case to defendant at its home office in Cleveland, Ohio. The defendant has no offices or officers in Minnesota. The question is whether service on Wyman conferred jurisdiction. The applicable statute is G. S. 1923 (2 Mason, 1927) § 9180, which reads as follows:

"When two or more persons transact business as associates and under a common name, whether such name comprise the names of such persons or not, they may be sued by such common name, and the summons may be served on one or more of them. The judgment in such case shall bind the joint property of all the associates, the same as though all had been named as defendants."

Defendant contends that it has never been engaged in business of any kind within the state of Minnesota or elsewhere that subjects it to service of process as was here attempted.

The claim of plaintiffs is that the defendant in its own name and also through ownership of all or the majority controlling stock of certain corporations has been engaged in numerous lines of businesses, including that of banking, securities, real estate, coal mining, sale of coal, manufacturing clothing, and various and sundry other lines of business, which it has carried on as an association during and at all the times and dates involved, and has been carrying on said businesses in the state of Minnesota and various other states of the United States, and that said businesses have been carried on by the defendant and its various members as partners and associates under a common name. Further, that during all the times in question defendant has been engaged in many activities having no connection with the activities of the labor union and quite apart from the promotion of the interests of their members.

The record discloses that defendant has been largely interested in corporations engaged in 36 different lines of business, in some of

which concerns it owned all or the controlling stock. In 1920 it organized a national bank under the name of the Brotherhood of Locomotive Engineers Co-operative National Bank of Cleveland, holding 51 per cent of the stock thereof. In 1929 the defendant became interested in the Standard Trust Bank, which it organized under the laws of the state of Ohio. The latter corporation took over the assets and assumed the obligations of the national bank. In 1925 the B. L. E. Realty Corporation was organized under the laws of the state of Florida. Defendant owned all of the stock of that corporation. In addition it organized and owned the majority controlling stock of the Brotherhood Holding Company and the Brotherhood Investment Company, both Ohio corporations. The latter corporation guaranteed the bonds issued by the B. L. E. Realty Corporation, both as to principal and interest. Defendant also owned the majority controlling stock of the Midwest Brotherhood of Locomotive Engineers Securities Corporation. It appears that this corporation was one of the financial companies organized by defendant for the purpose of. taking control of 51 per cent of the stock of the Transportation Brotherhood National Bank of Minneapolis then held by the Brotherhood Holding Company. It also appears that it was the intention to take controlling interest in any of the brotherhood institutions which might be organized in the vicinity of Minneapolis in the future. The general character of the business was to be the handling of bonds, stocks, and general securities.

At the trial a large amount of documentary evidence, consisting principally of the files in the office of the securities division of the department of commerce, was introduced. This documentary evidence had been presented at a hearing before that division in support of an application for registration and permission to sell stock of the Midwest corporation, hereinbefore referred to. At that hearing defendant appeared by counsel. Oral arguments were made and briefs filed.

On May 1, 1925, a letter, signed by Warren S. Stone, defendant's president, and by William B. Prenter, its general secretary-treas-

urer (later its vice president and then president), was addressed and sent to defendant's membership, to the stockholders of the Brotherhood Investment Company, and to all persons interested in the brotherhood's financial movement. It stated that pursuant to a resolution adopted by the advisory board of defendant they were proceeding to organize the Midwest Brotherhood of Locomotive Engineers Securities Corporation; that defendant's interests already controlled a successful and rapidly growing bank in Minneapolis. An urgent request was therein made that each of its members wholeheartedly support the undertaking; that it had the unqualified indorsement of the signers of the letter, and an earnest appeal was made for giving support to its representatives calling to sell securities.

In a statement issued by W. B. Prenter, president of the defendant and also president of the B. L. E. Realty Corporation, the following appears:

"The fact that the Brotherhood of Locomotive Engineers owns the capital stock of the B. L. E. Realty Corporation places behind this issue of bonds the interest and good faith of this organization."

Defendant published an official monthly magazine. In the issue of March, 1927, there appeared therein a full-page advertisement by the Brotherhood of Locomotive Engineers Co-operative National Bank in which there was offered:

"B. L. E. Realty Corporation Guaranteed Real Estate Collateral Trust 7% Gold Bonds."

The purchase of these bonds was recommended for several reasons, among others that:

"The B. L. E. Realty Corporation is owned and controlled by the Brotherhood of Locomotive Engineers."

It was also stated therein that the Brotherhood Investment Company guaranteed the interest and principal of the bonds. Prenter was then president of the above named bank and also the head officer of the defendant.

In the constitution of the defendant provision was made for a pension association of the Brotherhood of Locomotive Engineers, and in it it was provided that the president of the pension association should be the same person as the grand chief engineer of the Brotherhood of Locomotive Engineers; that the vice president should be the same person as the first assistant grand chief engineer of defendant, and the general secretary-treasurer should be the same person as the general secretary-treasurer of defendant; and that the trustees should not be members of the advisory board. In the articles relative to the Locomotive Engineers Mutual Life and Accident Insurance Association provision was made that defendant's same officers should hold corresponding positions in the insurance association. By means of having its officers in executive positions of other corporations which it controlled defendant effectively maintained the management thereof.

The record is replete with evidence, documentary and oral, along the lines herein referred to. A fuller statement is not necessary. It would but unduly lengthen this opinion. The contention of the defendant that its numerous activities and operations in which it engaged amounted to nothing more than an investment of surplus funds is wholly unwarranted. It is sufficient to say that under the evidence defendant was engaged in the transaction of business such as is contemplated in the statute referred to, and that the service of the summons and complaint in each case upon Wyman gave the court jurisdiction of the defendant. Taylor v. Order of Railway Conductors, 89 Minn. 222, 94 N. W. 684; Fitzpatrick v. International Typographical Union, 149 Minn. 401, 184 N. W. 17. See also State v. C. & N. W. Ry. Co. 133 Minn. 413, 158 N. W. 627; Minneapolis C. & C. Assn. v. C. M. & St. P. Ry. Co. 134 Minn. 169, 158 N. W. 817; Specht v. M. P. R. Co. 154 Minn. 314, 191 N. W. 905; State v. G. N. Ry. Co. 160 Minn. 515, 200 N. W. 834.

The orders appealed from are affirmed.