**OPERATIVE PLASTERERS' AND CEMENT FINISHERS' INTERNATIONAL ASS'N OF THE UNITED STATES AND CANADA v. CASE.**

No. 6766.

United States Court of Appeals for the District of Columbia.

Decided Sept. 7, 1937.

Charles S. Baker, Benjamin L. Tepper, and Robert H. Marcus, all of Washington, D. C., for appellant.

Arthur G. Lambert, George. L. Hart, Jr., and Arthur R. Murphy, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This appeal involves an action brought in the District Court of the United States for the District of Columbia upon a judgment obtained in the General County Court of Buncombe County, North Carolina. The principal question in the case is whether that judgment was valid in the jurisdictional sense. It is attacked upon the ground that the appellant is an unincorporated association—a trade union—and that such an association cannot be sued or served with process as an entity, as it was here,

and upon the further ground that the service of process in the North Carolina suit was not made upon any officer or agent or proper representative of the appellant.

The appellee Case, plaintiff below, alleged in his declaration in substance and effect that: The appellant, Operative Plasterers' and Cement Finishers' International Association of the United States and Canada, defendant below, is an unincorporated voluntary association and labor organization of more than 100,000 members. It has a large number of local unions, and is governed by a constitution and by-laws promulgated by and binding upon it. It is doing business in and has a local union in the District of Columbia. On August 22, 1932, the appellee obtained a judgment in the General County Court of Buncombe County, North Carolina in the sum of $9492 and costs, which judgment is in full force and effect and unpaid. The appellee prayed for judgment in the District Court of the United States for the District of Columbia upon the North Carolina judgment, in the sum above mentioned together with interest and costs of the present suit.

To this declaration the appellant filed two pleas. In the first it set up that the North Carolina judgment was obtained through an action against the appellant in its association name without setting out the names of the members, and without having had process issued against the members, and that neither at the time of the institution of the North Carolina action nor at the time of the judgment therein, was there in force and effect in North Carolina a statute enabling the bringing of an action against an unincorporated association in its association name. In the second plea the appellant asserted that no service of process in the North Carolina suit was had upon any officer of the appellant, or upon any person or agent in its employ, or upon any person upon whom proper service might have been had for the appellant, and that accordingly the North Carolina judgment was a nullity. Under each of its pleas the appellant urged that the North Carolina judgment ought not, because of the facts asserted, receive full faith and credit in the courts of the District of Columbia.

To the first plea the appellee demurred upon the ground that the question whether an unincorporated association may be sued as an entity is purely a procedural matter, and therefore the North Carolina judgment against the Association as an entity is not subject to collateral attack in the courts of the District of Columbia. The trial judge sustained this demurrer in a memorandum in which he said:

"The Court thinks that the first plea presents a question of procedure and not one of substance. United Mine Workers vs. Coronado, 259 U.S. 344, 390 [42 S.Ct. 570, 576, 66 L.Ed. 975, 27 A.L.R. 762]. The plea presents a question of procedure which could be raised only in the courts of North Carolina before judgment. Such question may not be raised in another jurisdiction in a suit upon a judgment obtained in a sister state. Such a judgment may be attacked only on substantive jurisdictional grounds. Brooks vs. Owen, 200 Iowa 1151 [202 N.W. 505]."

Upon the second plea issue was joined. Through their respective counsel the parties entered into and filed in the case a stipulation of fact, as follows:

"It is stipulated as fact by the attorneys for the plaintiff and attorneys for the defendant in the above cause that on July 13, 1932, Jesse B. Case filed suit in the General County Court of Buncombe County, North Carolina, a court of superior jurisdiction, against the Operative Plasterers and Cement Finishers International Association of the United States and Canada. That on July 18, 1932, the sheriff of Buncombe County read the summons and delivered a true copy of the same, together with the copy of a verified complaint in the said suit to S. L. Reese, Secretary-Treasurer of Local Union No. 176 of the Operative Plasterers and Cement Finishers International Association of the United States and Canada. That on the 18th day of July, 1932, S. L. Reese was Secretary-Treasurer of Local Union No. 176 of the Operative Plasterers and Cement Finishers International Association of the United States and Canada, which local union exercised local jurisdiction over the City of Ashville, in the County of Buncombe, North Carolina. Trial by jury is expressly waived and trial by the Court is requested in lieu thereof."

The case was tried to the court upon the question of fact presented by joinder of issue on the second plea, to wit, the question whether the service of summons was upon an officer of the appellant or upon a person or agent in its employ, or upon a

person upon whom proper service might have been had for it. The testimony of the president of the appellant was taken, the constitution of the appellant was introduced in evidence, and also a certified copy of the record in the North Carolina case, including the summons, complaint, and judgment. The complaint in the North Carolina case set forth as a cause of action in substance and effect that: The plaintiff (appellee) was at one time a member of the defendant association (appellant). While he was a member, and again after he had ceased to be a member, the defendant maliciously, wantonly and without cause, and in violation of the terms of the contract between him and it, and without due process as outlined in the constitution and by-laws, levied fines and assessments against him, put him upon a blacklist, published his name as a delinquent to all members in the United States and Canada, published to his employers that he was upon a blacklist, and requested, and obtained, his discharge from employment, thereby rendering it impossible for him to obtain employment or to keep employed. The record in the North Carolina case shows that there was no appearance by the defendant and that there was accordingly entered a "Judgment by Default and Inquiry" fixing a day certain for inquiry as to the amount of damages. In that judgment the court found as a fact that: ". . . the original of the summons and a copy of the complaint was duly filed on the defendant through its duly constituted agent and representative. . . ."[1] The judgment finally entered after the inquiry also found as a fact that the ". . . summons was duly issued and served on the defendant. . . ."

After receiving this evidence and concluding the hearing upon the merits of the second plea, the court below made general findings of fact in the following terms:

"Upon the issues of fact joined in this cause, the Court finds in favor of the Plaintiff. This finding will be entered by the Clerk to have the same effect as the verdict of the jury, in accordance with the provisions of Sections 70 and 71, Old Code [D.C.Code 1929, T. 18, §§ 72, 73]."

The defendant (appellant) filed a motion for a new trial. This was overruled, and judgment was then ordered and entered upon the finding of the court in the plaintiff's (appellee's) favor. From that judgment this appeal was taken.

## I

The instant suit upon the North Carolina judgment is brought in the District Court of the United States for the District of Columbia under the full faith and credit clause of the United States Constitution providing that: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." [U.S.Const. Art. IV, § 1, cl. 1] Under that clause the courts of one state need give no greater effect to a judgment of the courts of another than that judgment has in the latter; for example, if a judgment is inconclusive in the state where rendered, it is equally inconclusive in a sister state. 28 U.S.C. § 687 (28 U.S.C.A. § 687), Rev.Stat. § 905; Board of Public Works v. Columbia College (1873) 17 Wall. 521, 21 L.Ed. 687; Robertson v. Pickrell (1883) 109 U.S. 608, 3 S.Ct. 407, 27 L.Ed. 1049; 15 R.C.L. § 407, p. 929. The first question therefore is, was the North Carolina judgment valid according to North Carolina law. The appellant urges that it was not for the reason that under North Carolina law an unincorporated association is not suable as an entity; that is to say, cannot be a party, with the result that judgment against it would be void for lack of jurisdiction over any party defendant. The Supreme Court of North Carolina so held in Tucker v. Eatough (1923) 186 N.C. 505, 120 S.E. 57, upon the faith of Kerr v. Hicks (1911) 154 N.C. 265, 70 S.E. 468, 33 L.R.A.(N.S.) 529, and Nelson v. Relief Department (1908) 147 N.C. 103, 60 S.E. 724. The court in Tucker v. Eatough went so far as to say in respect of an unincorporated association, quoting from Nelson v. Relief Department:

"The 'relief department' [an unincorporated railroad insurance bureau] is not a natural person. It is not a corporate body. It has no legal entity. It is, in the eye of the law, an 'airy nothing.' It has no power to contract. Any contract made in its name would be the contract of the individual assuming to act for it or the contract

---

[1] Apparently a postponement of the inquiry was had, as there was entered, according to the record, a second judgment by default and inquiry setting a later date for the inquiry. That judgment also found as a fact ". . . that summons was duly issued, and served on the defendant through its local agent and representative . . ."

of the railroad company whose 'agency' it was. A judgment against the 'relief department' would have nothing to act on. The sheriff could find no one upon whom to levy his execution. It would glide from his grasp as the shade of Creusa eluding the embrace of Æneas.[2]" [186 N.C. 505, at page 507, 120 S.E. 57, at page 59, quoting from 147 N.C. 103, at page 104, 60 S.E. at page 724]

The court rested the decision also upon the following:

"if, contrary to common law, an action could be brought without authority of a statute against an unincorporated body, it would be permissible for any person to bring an action against the Confederate Veterans' Association, or the American Legion, or the League of Women Voters, or any other unorganized body, upon an allegation that one of their members had committed the libel or other legal wrong against the person bringing the action. It certainly cannot be necessary to discuss further the proposition that, the United Textile Workers [the unincorporated association sued in Tucker v. Eatough] of America not being a legal entity, and there

being no statute authorizing them to be sued, the action was properly dismissed as to them." [186 N.C. 505, at page 509, 120 S.E. 57, at pages 59, 60].

The same court, however, in Winchester v. Brotherhood of R. R. Trainmen (1932) 203 N.C. 735, 167 S.E. 49, took a different view. That case cannot be said to be definitely controlling, because it is based in part upon a statute not applicable to associations such as the appellant. The statute permitted unincorporated insurance associations to do business in North Carolina, and the North Carolina Supreme Court held that the statute in effect recognized that such an association can sue and be sued as an entity. The appellant is not an insurance association. But the Winchester Case certainly weakens the force of Tucker v. Eatough. Moreover, pending the appeal in the instant case, a further ruling by the very North Carolina court which rendered the judgment sued upon in the instant case, has been made. The decision is unreported but it has been made available in the form of a certified copy of the judgment, which is set forth in full in the margin.[3] It appears therefrom that, pending the in-

---

[2] The court then quoted:
"Tenuesque recessit in auras,
   Ter frustra comprensa manus effugit imago,
   Par levibus ventis volucrique simillima somno."
   —Virg. Æn. II, v. 791 et seq.
In free translation this is:
"Receding into unsubstantial breezes,
   Three times the image vainly grasped at slipt from his hands,
   Like unto thin air or a fleeting dream."

[3] State of North Carolina,   In the General
County of Buncombe,   County Court

Jesse B. Case,  Plaintiff,
    vs.
Operative Plasterers' and Cement Finishers' International Association of the United States and Canada,  Defendants.   Judgment

This cause coming on to be heard, and being heard, at this the June 1937 term of the General County Court of Buncombe County before His Honor, J. P. Kitchin, Judge of said Court, upon the special appearance and motion of Operative Plasterers' and Cement Finishers' International Association of the United States and Canada, an unincorporated association, and it appearing to the Court, and the Court finding as facts:

1.
That Operative Plasterers' and Cement Finishers' International Association of the United States and Canada is and was at all times herein referred to, an unincorporated, voluntary association. The nature and status of said Operative Plasterers' and Cement Finishers' International Association of the United States and Canada as an unincorporated, voluntary association is set forth in its Constitution, in accordance with which said association was formed. An exact copy of said Constitution is attached to said motion and made a part thereof. Said Constitution is now and was at all the times herein set forth in full force and effect.

2.
The motion was heard upon affidavits and certified copies of the proceedings in the District Court of the United States for the District of Columbia, being law #83914 in said Court, and in the United States Court of Appeals for the District of Columbia, being law #6766 in that Court, in which Court the case is now pending, together with the record and trial of this cause in the General County Court of Buncombe County, North Carolina.

3.
That Summons was duly issued and served upon S. L. Reese, an agent of the

stant appeal the defendant under the North Carolina judgment (the appellant herein) specially appearing, filed a motion in the General County Court of Buncombe County, North Carolina, questioning, in the very suit in North Carolina which resulted in the judgment sued upon in the instant case, the right to sue it as an entity, and questioning also the sufficiency of the service of process upon S. L. Reese, as the agent of the defendant in that suit.[4] It further appears from the judgment that after a hearing upon the motion it was denied. In denying it the North Carolina court ruled that "the question relating to whether or not an unincorporated trade association may be sued in the courts of North Carolina as an entity is purely a qestion of procedure, and should be raised by the defendant before judgment is rendered, and . . . a failure to raise the question before judgment is a waiver and cannot be taken advantage of after judgment." While this ruling is not by the court of last re-

defendant, and that a copy of the Summons and Complaint was sent to T. A. Scully, the Secretary-Treasurer of the International Association, and that the said T. A. Scully received the same and replied concerning said suit then pending by letter to the said S. L. Reese, Secretary-Treasurer of the said Local No. 176, and that the said defendant had due notice of the pendency of said action and failed within the time prescribed by statute to make any appearance whatever.

4.

That Judgment was taken by default and Inquiry and final Judgment had upon Inquiry, plaintiff offering sufficient evidence upon which to base said judgment, and that the defendant failed to request a trial by Jury, as it had a right to do, thereby waiving its right to trial by Jury.

5.

That the plaintiff in due time, upon certified transcript of the records of the General County Court in this cause, instituted suit in the Supreme Court of the District of Columbia, now the District Court of the United States for the District of Columbia, based upon the Judgment rendered by the General County Court of Buncombe County, and that the same questions were raised in that Court that are now raised in this Motion.

6.

That upon the facts as herein found that the question relating to whether or not an unincorporated trade association may be sued in the Courts of North Carolina as an entity is purely a question of procedure, and should be raised by the defendant before judgment is rendered, and that a failure to raise the question before judgment is a waiver and cannot be taken advantage of after judgment.

7.

That the defendant has admitted that S. L. Reese was its agent in the State of North Carolina for certain purposes therein stated. The Court further finds as a matter of law that service upon him and the consequent sending of the Summons and copy of the complaint to the Secretary-Treasurer of the International Association of the Operative Plasterers' and Cement Finishers' of the United States and Canada was sufficient service to bring the defendant into Court.

8.

The Court further finds as a matter of law that the remaining questions raised by said Motion should have been raised by the defendant before Judgment, and the failure to raise said questions is a waiver upon the part of the defendant to any rights thereunder.

9.

And the Court further finding as a matter of law that the same questions have been raised by the defendants in the Courts of proper jurisdiction in the District of Columbia and have been decided adverse to the defendant based upon the full faith and credit clause of the Constitution of the United States, and that said matters now raised for the first time in this court are res judicata.

That upon the findings of fact and conclusions of law herein set forth, the Court is of the opinion that the Motion of the defendant should be, and is hereby denied.

This the 24th day of June, 1937.

J. P. Kitchin

Judge of the General County Court of Buncombe County

[4] The exact terms of the motion do not appear from the certified copy of the judgment, but the nature of the attack is apparent from the findings of the North Carolina court as set forth in the judgment. Moreover, at the time of the argument of the instant appeal, it was stated in open court by counsel for the appellant that the appellant was then attacking in the General County Court of Buncombe County, North Carolina, the North Carolina judgment, on substantially the same grounds as those involved in the instant appeal, that a motion was then pending in the North Carolina court to quash the service of process and to adjudge null and void the judgment entered in the North Carolina court.

sort of North Carolina, it is a ruling by a North Carolina court the competency of which to adjudicate upon the subject matter of the North Carolina suit has not been questioned, and it is the latest ruling of which we are aware by a North Carolina court upon the question of the propriety of suing an unincorporated association as an entity. As such we think we ought to accept it as a correct reflection of the state of the law in North Carolina. At the moment we are inquiring as to the validity of the North Carolina judgment according to North Carolina law; we are not· sitting in review of the North Carolina trial court.

The ruling constitutes a decision that the North Carolina judgment upon which the instant suit is brought is a valid judgment, because the validity of a judgment in the jurisdictional sense of being rendered by a competent court having the parties before it can be questioned at any time, and therefore, had the North Carolina court regarded the judgment as invalid, it must have sustained the motion, despite the fact that it was made after entry of the judgment. We hold, therefore, that the judgment sued upon in the instant case is valid according to North Carolina law.

## II

The conclusion that the North Carolina judgment was valid under North Carolina law does not, however, end the inquiry, because the full faith and credit clause of the United States Constitution applies to the judicial proceedings of courts only so far as the courts have jurisdiction of both the subject matter of the cause and of the parties according to the rules laid down under the due process clause of the United States Constitution (Const. Amend. 14) Board of Public Works v. Columbia College, *supra;* Pennoyer v. Neff (1877) 95 U.S. 714, 24 L.Ed. 565. That is to say, a court of one state is not required by the full faith and credit clause to regard as conclusive a judgment of a court of another state if the court of the latter had no jurisdiction of the subject matter or of the parties in the constitutional sense (see Reynolds v. Stockton (1891) 140 U.S. 254, 264, 11 S.Ct. 773, 35 L.Ed. 464), and the

jurisdiction of the court rendering a judgment is open to inquiry in a suit thereon in another state. Thompson v. Whitman (1873) 18 Wall..457, 21 L.Ed. 897; Knowles v. Gaslight & Coke Co. (1873) 19 Wall. 58, 22 L.Ed. 70; Brown v. Fletcher's Estate (1908) 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966; Bigelow v. Old Dominion Copper Co. (1912) 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas.1913E, 875; see Simmons v. Saul (1891) 138 U.S. 439, 448, 11 S.Ct. 369, 34 L.Ed. 1054. Hence the trial court in the instant case properly examined into and determined for itself as a court of the sovereignty—the United States[5]—in which the instant suit is brought, whether the North Carolina court had jurisdiction; that is to say, the trial court properly inquired into and determined for itself the questions, did the North Carolina court violate due process by treating the appellant unincorporated association as an entity for purposes of suit, and was the service of summons in the North Carolina suit such a service as lawfully subjected the appellant (the defendant in that suit) to the jurisdiction of the North Carolina court in an action *in personam.*

The trial court ruled in the affirmative on both questions, and we proceed now to discuss the correctness of these rulings.

## III

Did the North Carolina court violate due process by allowing the Association to be sued as an entity? We think not. In Jardine v. Superior Court in and for Los Angeles County (1931) 213 Cal. 301, 2 P. (2d) 756, 79 A.L.R. 291, the Supreme Court of California upheld the constitutionality of a statute allowing two or more persons, associated in any business and transacting business under a common name, to be sued in the common name, the summons to be served upon one or more of the associates, and the judgment to bind the joint property of all the associates and the individual property of those served with process. The validity of the statute was attacked by the Los Angeles Stock Exchange, an unincorporated association, upon the ground that it violated due process. In rejecting this contention the court ruled that al-

[5] The courts of the United States are bound to give the judgments of state courts the same faith and credit that the courts of one state are bound to give the judgments of the courts of another.

Cooper v. Newell (1899) 173 U.S. 555, 19 S.Ct. 506, 43 L.Ed. 808; Milwaukee County v. White (1935) 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220.

though an unincorporated association could not be sued in the association name at common law:

"The validity of section 388 [Code Civ. Proc.Cal.] has not been directly passed upon in any case that we have found in our reports, although it has been frequently applied, as will hereinafter appear. A study of its origin and purpose should, however, remove any doubts which may have existed. For a long time the established rule was that in the absence of statute, an unincorporated association could not sue or be sued in its common name; all the members thereof had to appear in their own names as parties plaintiff or defendant. The basic reason was that the association was not, in the eyes of the law, a legal unit or entity, and had no legal capacity to become a party to an action. [Authorities cited] The difficulty was only one of procedure, and the objection was purely technical. The liabilities or rights of the members were in no way involved, and were not, in theory, impaired by the operation of the [common law] rule. They might have brought actions if they all joined as plaintiffs, and they might have been held to any liability imposed upon them by law, if sued and served individually. But where associations with large membership were involved, the operation of the rule frequently had inconvenient and unjust consequences, and various exceptions came to be recognized. . . .

"The many inconveniences of the rule were not wholly evaded by these exceptions, and statutes were widely adopted for the purpose of eliminating this procedural obstacle by permitting suits to be brought against the associates in the common or association name. . . . The statutes dealt solely with the manner of bringing actions, and were not intended to effect any change in the substantive law. Members of associations had the same rights and were subject to the same liabilities as before, only now they could be sued by a less complicated and cumbersome process. . . .

"Such statutes, whenever subjected to constitutional attack, have been uniformly sustained, not only as to partnerships but as to other unincorporated associations, including those not organized for profit. [Authorities cited] . . .

\* \* \*

"We think that it was unquestionably competent for the legislature to enact section 388, and that it is perfectly consistent with due process to provide that jurisdiction over an association doing business shall result from service upon one or more of its members. So far as constitutionality is concerned, we see no distinction between such a statute applied to partnerships and to other unincorporated associations." [213 Cal. 301, at pages 307–310, 2 P.(2d) 756, at pages 758–760, 79 A.L.R. 291]

An appeal to the Supreme Court of the United States was dismissed, *per curiam* for lack of a substantial federal question, upon the strength of Sugg v. Thornton (1889) 132 U.S. 524, 10 S.Ct. 163, 33 L. Ed. 447, and United Mine Workers v. Coronado Coal Co. (1922) 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762. Jardine v. Superior Court (1932) 284 U.S. 592, 52 S.Ct. 197, 76 L.Ed. 510.

The pertinency of this decision is apparent, for a state may no more deprive a person, natural or artificial, of property without due process of law by means of a statute than it may in absence of statute. Hence if a statute such as that considered in the Jardine Case does not violate due process, the North Carolina court did not violate due process when it reached the same result by judicial decision without statutory support. Another case sustaining a statute allowing suit against an unincorporated association in its association name is Patch Manufacturing Co. v. Capeless (1906) 79 Vt. 1, 63 A. 938; see Note, "Due Process of Law" in Statutory Remedies against Unincorporated Associations (1906) 20 Harv.L.Rev. 58.

Furthermore, the decision of the Supreme Court of the United States in United Mine Workers v. Coronado Coal Co. (1922) 259 U.S. 344, 42 S.Ct. 570, 66 L. Ed. 975, 27 A.L.R. 762, seems to put the matter at rest. In that case, brought under the antitrust laws against several national trade unions, the defendants raised the point that as unincorporated associations they were not subject to suit. The Supreme Court held that they were, and this notwithstanding the fact that the suit was brought in the United States District Court for Arkansas and that the Supreme Court of Arkansas had taken a different view.[6] Speaking through Mr. Chief Justice Taft, the Supreme Court said:

---

6 Baskins v. United Mine Workers (1921) 150 Ark. 398, 234 S.W. 464.

"Undoubtedly at common law, an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members, and their liability had to be enforced against each member. [Authorities cited] But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary. Their right to maintain strikes, when they do not violate law or the rights of others, has been declared. The embezzlement of funds by their officers has been especially denounced as a crime. The so-called union label, which is a quasi trademark to indicate the origin of manufactured product in union labor, has been protected against pirating and deceptive use by the statutes of most of the States, and in many States authority to sue to enjoin its use has been conferred on unions. They have been given distinct and separate representation and the right to appear to represent union interests in statutory arbitrations, and before official labor boards. . . . More than this, equitable procedure adapting itself to modern needs has grown to recognize the need of representation by one person of many, too numerous to sue or to be sued [Authorities cited]; and this has had its influence upon the law side of litigation, so that, out of the very necessities of the existing conditions and the utter impossibility of doing justice otherwise, the suable character of such an organization as this has come to be recognized in some jurisdictions, and many suits for and against labor unions are reported in which no question has been raised as to the right to treat them in their closely united action and functions as artificial persons capable of suing and being sued." [259 U.S. 344, at pages 385–388, 42 S.Ct. 570, 574, 575, 66 L.Ed. 975, 27 A.L.R. 762]

The Court then pointed out that it would be unfortunate if a great unincorporated association could raise large funds and carry on widespread controversial activities, out of which unlawful injuries to private rights might arise, free from liability for such injuries—and that to remand persons injured to suit against each of the members of such an association would be to leave them remediless. And then, after stating the case of Taff Vale Ry. Co. v. Amalgamated Society of Railway Servants [1901] A.C. 426, where suit was allowed against a trade union as an artificial person, the Court continued:

"Though such a conclusion as to the suability of trades unions is of primary importance in the working out of justice and in protecting individuals and society from possibility of oppression and injury in their lawful rights from the existence of such powerful entities as trade unions, it is after all in essence and principle merely a procedural matter. As a matter of substantive law, all the members of the union engaged in a combination doing unlawful injury are liable to suit and recovery, and the only question is whether when they have voluntarily, and for the purpose of acquiring concentrated strength and the faculty of quick unit action and elasticity, created a self-acting body with great funds to accomplish their purpose, they may not be sued as this body, and the funds they have accumulated may not be made to satisfy claims for injuries unlawfully caused in carrying out their united purpose." [259 U.S. 344, at pages 390, 391, 42 S.Ct. 570, 576, 66 L.Ed. 975, 27 A.L.R. 762.]

We are aware that the Supreme Court was not directly considering the application of the due process requirements of the Constitution, but we think the language last quoted a sufficient indication that no constitutional right is infringed by allowing suit against an association as an entity, whether by statute or in absence of statute. The Court was apparently of the view that such manner of suit involved no unlawful deprivation of property. And the dismissal of the appeal in the Jardine Case seems conclusive that no serious due process question exists.

Theoretically, in a suit against an unincorporated association as an entity, there might be said to be a due process question in the sense of whether or not there is a party in existence before the court against whom a judgment *in personam* can be entered, but such a question seems to be determined by the Coronado Case. Indeed, so far as due process is concerned there is no greater problem in allowing a suit which seeks to reach a common fund to lie against an unincorporated association as an entity than there is in allowing a suit to lie against a corporation as such. The

corporate entity and the unincorporated association "entity for purpose of suit" are both fictions of the law.

What the courts are really saying in such cases as United Mine Workers v. Coronado Coal Co. and Jardine v. Superior Court is that inasmuch as a fictional entity has been recognized by the law for the purpose of benefiting and protecting unincorporated associations in both the substantive and adjective senses, as by protection against embezzlement of funds, by giving rights to appear in statutory arbitrations and before official boards, and, more recently, by giving rights to represent workers in collective bargaining,[7] so also the fictional entity must in common fairness be recognized for the protection of those dealing with such associations and claiming that in such dealing their legal rights have been violated.

## IV

■ Was the service of summons in the North Carolina suit such as lawfully subjected the defendant there (the appellant) to the jurisdiction of the North Carolina court in an action *in personam*: For service of process to be valid in an action *in personam* the service must have been by a method reasonably calculated to give the person or entity knowledge of the attempted exercise of jurisdiction and an opportunity to be heard. See Restatement, Conflict of Laws, § 75. In respect of an unincorporated association the service may be upon "any agent or representative of the association whose character in relation to the association is such that it could be reasonably expected that he would give notice of the suit to his association." See Brotherhood of Railroad Trainmen v. Agnew (1934) 170 Miss. 604, 155 So. 205, 207. And see the following which are cited therein: Unkovich v. New York Cent. R. R. Co. (1933) 114 N.J.Eq. 448, 168 A. 867; Sprainis v. Lietuwishika Evangelishka Liuterishka Draugystes (1924) 232 Ill.App. 427; Fitzpatrick v. Rutter (1896) 160 Ill. 282, 43 N.E. 392; Adams Exp. Co. v. Schofield (1901) 111 Ky. 832, 64 S.W. 903; Hamilton v. Delaware Motor Trades (1931) 4 W.W.Harr. (34 Del.) 486, 155 A. 595; Grand Lodge K. P. v. Massey (1926) 35 Ga.App. 140, 132 S.E. 270; Slaughter v. American Baptist Publication Society (Tex. Civ.App.1912) 150 S.W. 224; Express Co. v. State (1896) 55 Ohio St. 69, 44 N.E. 506.

## V

■ Was the summons in the North Carolina suit served upon "any agent or representative of the association whose character in relation to the association is such that it could be reasonably expected that he would give notice of the suit to his association?" Concretely, in the instant case was S. L. Reese, Secretary-Treasurer of Local Union No. 176, an agent or representative of the appellant International Association whose character in relation to it was such that it could be reasonably expected that he would give notice of the North Carolina suit to the Association? The finding of the trial court was in the affirmative on this question of fact. Our authority is, under familiar rules, limited on appeal to the inquiry as to whether or not there was some substantial evidence to support the finding of the trial court on the subject. "The case in the appellate court must be determined, not by considering and weighing conflicting testimony, but upon a decision of the question as to the presence of testimony in the record fairly tending to sustain the verdict." Troxell v. Delaware, Lack. & West. R. R. Co. (1913) 227 U.S. 434, 444, 33 S.Ct. 274, 57 L.Ed. 586; see 6 Cyclopedia of Federal Procedure (1929) § 2988, pp. 625–26. See, also, U.S.Code, title 28, section 773 (28 U.S.C.A. § 773) providing that the finding of a trial court on facts shall have the same effect as the verdict of a jury.[8]

The evidence in the affirmative upon the issue, largely the constitution of the appellant, showed the following: The secretary of a local union is required by the constitution to forward the names of all members of the local to the appellant, to register all apprentices with the appellant, and to notify the headquarters of the appellant when apprentices leave or arrive in the

---

[7] National Labor Relations Act, 29 U.S.C.A. §§ 151–166, 49 Stat. 449–457.

[8] "Issues of fact in civil cases in any district court may be tried and determined by the court, without the intervention of a jury, whenever the parties, or their attorneys of record, agree to waive a jury by a stipulation in writing filed with the clerk or by an oral stipulation made in open court and entered in the record. The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury." Rev.Stat. § 649, as amended by Act May 29, 1930, 46 Stat. 486.

jurisdiction of a local, to send to the general president and secretary-treasurer of the appellant on blanks furnished by it a monthly report of the state of the trade, the number of paid members, the number of new members and of deaths, resignations, expulsions, and of all cash received. Strike moneys furnished out of the national defense fund of the appellant are paid for the aid and support of strikers through the secretary and other local officers of the local unions, and the local secretary (referred to as a clerk in those sections of the constitution relating to strikes and lockouts) is required to prepare triplicate payrolls of members entitled to receive strike moneys, and to sign the same before submitting them, and to prepare a weekly consolidated statement of receipts and disbursements and a monthly statement for publication by the secretary of the appellant, and to prepare also a final consolidated statement of moneys received and disbursed during a strike or lockout, to be submitted to the secretary of the appellant. The local secretary has also certain duties for the appellant in respect of the travelling book system. Under this system travelling books containing arrival and departure coupons are issued by the appellant through its general secretary-treasurer to the locals. The local secretary issues the travelling books to members and stamps the same. If a member of one local transfers to another, he presents a departure coupon to the local he is leaving and an arrival coupon to the local to which he goes. The local secretary is required to send such coupons within a stipulated time to the general secretary-treasurer in order that the appellant may keep advised of the whereabouts of each member. When a member has been penalized, travelling book privileges cease, and the local notifies the appellant and the latter strikes the member's name from the rolls. Such notifications are apparently to be made by the local secretary. The local secretary seemingly also has duties concerning death benefits, such as procuring certificates of death, furnishing certificates of good standing at the time of death on blank forms furnished by the appellant's secretary-treasurer, and similar duties in respect of incapacitation benefits. In the event of imposition of fines by a local, the appellant is to be notified in advance and fines of more than fifty dollars are not to be registered by the appellant until evidence concerning them is submitted to and approved by the general executive board. It is apparently the duty of the local secretary to send in such evidence and to report fines to the appellant upon a form furnished by the appellant. The local secretary is required to remit to the appellant sixty-five cents per month per member—a due fixed by the constitution. Each local secretary is required to furnish a bond, the same to be placed on file with the appellant. A local secretary may be removed by the executive board of the appellant for cause, or for a second failure to remit the monthly due. And the local of which the local secretary is a member is to be fined for the failure of the secretary to remit the local due. Also, if the local secretary fails to file his report, members of the local will be deemed not to be in good standing.[9]

---

[9] There was some evidence in the negative on the issue. That stressed by the appellant was: Reese was not an officer of the appellant in the strict sense of the term officer but only a member. Officers of the appellant are chosen by a convention composed of representatives of the local unions. The appellant has no authority to impose fines upon a member for infraction of the rules; that may be done only by the local union; and if a fine is levied and collected, the appellant receives no part of it. The functions of the appellant are principally the issuance of a monthly publication giving the members general information concerning their trade as well as advising them of localities where work may be had, the payment of disability and death benefits, the protection of a travelling book system, the payment of benefits during strikes and lockouts, and the settlement of disputes and strikes between contractors and local unions. The local unions are largely autonomous and the powers granted to the appellant few and limited.

It is to be commented that, except for the statement to the effect that Reese was not an officer of the appellant, this evidence goes largely to the distribution of powers and functions as between local unions and the appellant rather than to the question whether, to the extent that the appellant did itself have powers and functions, Reese, though not an officer of the appellant, was nevertheless an agent or representative thereof whose character in relation to it was such that it could be reasonably expected that he would give notice of the suit to the appellant when served with process.

The affirmative evidence in the record constitutes substantial evidence, or "testimony in the record fairly tending to sustain . . ." the finding of the trial judge in the appellee's favor upon the second plea. It seems not unreasonable for the trial judge to have inferred from the nature of the duties of the local secretary as shown by the constitution that although he was not an officer of the appellant, he did have certain duties to perform for the appellant as well as for the local, and that the nature of those duties was such that notice to him of a lawsuit by service of process upon him would likely reach the appellant through him. It seems not unreasonable for the trial judge to have inferred that a local secretary required, upon pain of removal, to give detailed weekly and monthly information to the appellant on stipulated matters of interest to it in respect of functions performed by it, would give information of the service of a summons upon him in a suit brought against it, and particularly of a summons in a suit such as the North Carolina suit, which sought damages against the appellant for alleged blacklisting, this in view of the fact recited above that reports concerning fines and removals from membership are a particular subject of secretarial reports.[10]

The courts have in a number of instances ruled upon the question whether an officer of a local of an unincorporated association has such a relation to it that it could reasonably be expected that if served with process he would give notice of the suit to the association. As these cases are determinations of fact, and as each case varies in its facts, they are not of much persuasive value in the instant situation; and as they are from other jurisdictions, are not controlling. It is, however, of interest to mention them. Sustaining service as against an unincorporated association when made upon an officer of a local union are the following: Brotherhood of Railroad Trainmen v. Agnew, *supra*; Winchester v. Brotherhood of R. R. Trainmen, *supra*; Bowers v. Grand I. B. of Locomotive Engineers (1933) 187 Minn. 626, 246 N.W. 362. The following cases also support on their facts service of process upon the local representative of an unincorporated association. They do not, however, involve trade unions as such. Sprainis v. Lietuwishika Evangelishka Liuterishka Draugystes, *supra*; Fitzpatrick v. Rutter, *supra*; Adams Exp. Co. v. Schofield, *supra*; Hamilton v. Delaware Motor Trades, *supra;* Grand Lodge K. P. v. Massey, *supra;* Slaughter v. American Baptist Publication Society, *supra*; Express Co. v. State, *supra*.

The following cases hold on their particular facts that service upon the officer of a local lodge or union is not sufficient to bind the unincorporated parent association. Christian v. International Ass'n of Machinists (D.C.E.D.Ky.1925) 7 F.(2d) 481; Singleton v. Order of Railway Conductors of America (D.C.S.D.Ill.1935) 9 F.Supp. 417. The Christian Case and the Singleton Case are trial court rulings. Moreover, in the Christian Case, although the court decided against the validity of service, it nevertheless recognized the principle of the cases which on their facts support service upon an officer of a local. The court there said:

"It is not to be blinked at that these unions, international and local, artificial units and entities, and suable as such, cannot be brought before the court, save by service of process on a *direct representative, whose relation thereto is such that it is reasonable to infer that the service of such process on him will be brought home to the union which he represents.* They are entities, distinct and separate from their membership and subordinates, as much so as a corporation is an entity distinct from its stockholders or subordinate organizations.

[10] While it cannot be considered as evidence in the case, it is nevertheless proper to comment that the finding of the trial judge in the instant case in respect of the propriety of service of summons upon Reese as an agent of the appellant was confirmed in the North Carolina judgment pending appeal, referred to above and set out in footnote 3. In that judgment the North Carolina trial court specifically found:

"That Summons was duly issued and served upon S. L. Reese, an agent of the defendant, and that a copy of the Summons and Complaint was sent to T. A. Scully, the Secretary-Treasurer of the International Association, and that the said T. A. Scully received the same and replied concerning said suit then pending by letter to the said S. L. Reese, Secretary-Treasurer of the said Local No. 176, and that the said defendant had due notice of the pendency of said action and failed within the time prescribed by statute to make any appearance whatever."

"Of course, it is possible, where an association consists of supreme and inferior bodies, for the inferior body or an officer or member of it to be an agent for the supreme body in a certain particular, if the constitution so provides, or the supreme body may in some contingency make it or him its agent in a particular transaction, in which case the supreme body will be affected by its or his action within the scope of the agency." [7 F.(2d) 481, at page 482] [Italics supplied]

In the Singleton Case the court seemed to look for some express authority in the statutes of the order which would make an officer of a local union a representative of the national body in respect of service of process, rather than to accept the test of the Christian Case.

Recapitulating, we hold that: The North Carolina judgment was valid under North Carolina law. It was valid also under the due process clause—no constitutional right having been impaired by subjecting the appellant Association to suit as an entity, and the appellant Association having been subjected to jurisdiction by service of process upon a proper representative.

Accordingly, the judgment of the trial court is

Affirmed.