## NATIONAL ORGANIZATION MASTERS, MATES AND PILOTS OF AMERICA, Inc. v. BANKS.

### No. 13731.

United States Court of Appeals
Fifth Circuit.

April 29, 1952.

Rehearing Denied June 4, 1952.

Vernol R. Jansen, Mobile, Ala., Raymond Sheldon, Tampa, Fla., for appellant.

J. Tom Watson, Morison Buck, and A. B. Angle, all of Tampa, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

BORAH, Circuit Judge.

Thomas J. Banks brought this action in the United States District Court for the Southern District of Florida against the National Organization Masters, Mates, and Pilots of America, Inc. The complaint alleges that the action arises under the Fifth Amendment to the Constitution of the United States, and the Civil Rights Act, R.S. Section 1979, 8 U.S.C.A. § 43; that Banks was employed by Lykes Brothers Steamship Company, Tampa, Florida, to act as night mate on certain of its vessels; and that the National Organization Masters, Mates, and Pilots did unlawfully,

maliciously, and without just cause procure his discharge because of his non-membership in the National Organization.

Appearing specially for the purpose of testing the validity of the service of process and the jurisdiction of the court, the defendant below moved to quash the service on the ground that process was not served on one of its officers or agents. After hearing evidence and argument, the court entered its order denying the motion to quash and the case proceeded to trial before a jury, which returned a verdict in favor of Banks. Thereafter the court entered a final judgment in accordance with the jury's verdict and this appeal followed.

The controlling question presented by this appeal is the validity of process served upon the National Organization Masters, Mates, and Pilots of America, Inc., a foreign corporation.

The facts, so far as relevant, are as follows. The defendant, National Organization Masters, Mates, and Pilots of America, Inc., is a New York corporation having its principal office in Washington, D.C., and thirty-four subordinate organizations called Locals, located in lake and seaport cities of the United States. Some of these Locals are incorporated and others are conducted as unincorporated associations, fraternal in nature. The defendant was originally organized in 1891 under the corporate name of Grand Harbor of the American Brotherhood of Steam-Boat Pilots of the United States as a benevolent and fraternal organization of steamboat pilots.[1] Through the years its name has been changed several times and the character of the organization has apparently changed somewhat but its membership is still composed of the licensed masters, mates and pilots of ocean, coastwise and inland vessels and of licensed pilots, pilot navigators, and navigators of airships and many of its benevolent and fraternal characteristics appear to have been retained.

The corporation's presence in the State of Florida depends solely on the fact that a subordinate local, known as St. John's No. 24, is located in the city of Jacksonville. The constitution and by-laws of this local provide that the officers shall consist of a president, vice-president, second vice-president, secretary-treasurer, and three trustees; that these elective officers shall compose the executive committee of the Local; and that the executive committee shall have the power of a board of directors to conduct the affairs of the organization. The constitution and by-laws further provide that the secretary-treasurer shall devote his entire time to the affairs of the Local; that he shall be responsible for the actions of the Local pending decision of the executive committee; and that he shall have custody of all property, carry on all correspondence, and receive and expend all monies of the Local.

With respect to the service of process it appears from the marshal's return on service of the writ that the summons was executed at Jacksonville, Florida, by delivering a true copy thereof, together with a copy of the complaint, to Fred Angerholzer, who is styled therein, "Business Agent of the National Organization Masters, Mates and Pilots of America, Local No. 24."

At the time of service of process, Fred Angerholzer had several jobs. As Deputy Harbor Master, appointed by the governor of the State of Florida, he was required to board all vessels coming into port and collect certain fees for the Harbor Master. His principal occupation, however, was that of Shipping Master. As Shipping Master his services were similar to those of the ordinary employment agency; he was self-employed, licensed by the State, and furnished both officers and crew members to the various vessels and companies in need of such men. In this connection he maintained an office which members of Local 24 frequented in order to obtain employment through him. In addition to his employment as Harbor Master and his business as Shipping Master, Angerholzer was employed by Local No. 24. The minutes of the Local do not disclose his employ-

1. The corporation was organized under the authority of the Act of April 12, 1848, entitled, "An Act for the Incorporation of Benevolent, Charitable, Scientific, and Missionary Societies."

ment but the secretary-treasurer of the Local testified that since Angerholzer's duties as Deputy Harbor Master required him to go aboard all vessels coming into port, it was convenient for the Local to use him in putting its members aboard ships; and that the Local paid Angerholzer $50.00 per month for performing this service. The secretary-treasurer swore that Angerholzer only had authority to send men aboard ships; that this was a duty which he should have performed but did not have time to do; and that Angerholzer could only act under his supervision and control. There is also testimony to the effect that Angerholzer received money from any man desiring to pay his dues and as a matter of courtesy to the men transmitted such payments to the proper local. It was in this connection that Angerholzer apparently received $95.00 from Banks in payment of dues and thereafter informed Banks that Local No. 15 at New Orleans, Louisiana, had refused to accept the payment. In his first letter to Banks, Angerholzer signed the name of Captain L. C. Adams, Secretary, per Fred Angerholzer, Business Agent. The second letter is also signed by Angerholzer as "Business Agent," Local No. 24. However, the secretary-treasurer swore that Angerholzer had no authority to so designate himself and that he only had authority to send the men aboard ships. There is no evidence in this record to the contrary. In the conduct of his business as Shipping Master Angerholzer placed both union and non-union men in the available jobs and sometime after the service of process in this case he was discharged by Local 24 because it was dissatisfied with his services in placing its members.

Rule 4(d)(3), Federal Rules of Civil Procedure, provides that service of process shall be made upon a domestic or foreign corporation, or upon an unincorporated association subject to suit under a common name, by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. In Rule 4(d) (7) it is provided that service of process is also sufficient if the summons and complaint are served in the manner prescribed by the law of the state in which the service is made. Title 6, Section 47.17, Florida Statutes Annotated, provides:

"Process against any corporation, domestic or foreign, may be served:

"(1) Upon the president or vice-president, or other head of the corporation; and in the absence of such head:

"(2) Upon the cashier, treasurer, secretary or general manager; and in the absence of all of the above:

"(3) Upon any director of such company; and in the absence of all of the above:

"(4) Upon any officer or business agent, resident in the State of Florida.

"(5) If a foreign corporation shall have none of the foregoing officers or agents in this state, service may be made upon any agent transacting business for it in this state."

The obvious purpose of this statute is to have the service made upon some one who is held responsible by the corporation and it contemplates that service shall be made, whenever possible, upon the more responsible officers before resorting to service upon one of the inferior officers or agents of the corporation. Cherry Lake Farms v. Love, 129 Fla. 469, 176 So. 486; Grady v. Electric Bond & Share Co., 137 Fla. 793, 189 So. 18. This objective is based on good sense and sound reason. For example, one possible objection which has been raised to Rule 4(d)(3), Federal Rules of Civil Procedure, is that unless the plaintiff is compelled to serve the officers and agents holding the more responsible positions, when it is possible to do so, plaintiffs will serve those with less responsibility in the hope that the information will not be transmitted to the proper corporate officers, thus resulting in a default judgment. In such a contingency, Professor Moore suggests that the courts will adjust such a general term as "agent" to the situation presented and thus cause plaintiffs to make as thoroughly reasonable a service as the

situation warrants. 2 Moore's Federal Practice (2d ed) § 4.23.

Putting to one side the question as to whether the corporation's activities within the state are sufficient to warrant a finding that it is doing business there, we turn to a consideration of whether Angerholzer can be said to be the agent of the defendant corporation. So far as we can see, there is no relation whatever between Angerholzer and the corporation. He is not and has never been an officer, or employee, or member thereof. Nor is he an officer of Local 24. As a matter of fact, he is neither a member of the Local nor eligible for membership. In short, he was merely a person hired by the Local at a salary of $50.00 per month to perform certain minor duties which the secretary-treasurer was obligated to perform under the constitution and by-laws. He could act only with the permission of the secretary-treasurer, to whom he was responsible, and he had no authority to act or assume the title of business agent. The record does not disclose the reason why service was not had on one of the officers of the defendant corporation or, in their absence, on one of the officers of the Local. But even if such showing had been made, we are of opinion that the character of Angerholzer's relation to the defendant corporation was not such that he could be deemed its "business agent" or "agent transacting business" for it in the State of Florida. Cf. Operative Plasterer's, etc., Ass'n v. Case, 68 App.D.C. 43, CA DC, 93 F2d 56; Dean v. International Longshoremen's Ass'n, D.C., 17 F. Supp. 748; Singleton v. Order RR Conductors, D.C., 9 F.Supp. 417.

Appellee seemingly places some reliance on Florida Statutes '49, Section 447.11, F.S.A. We think this statute clearly has reference to actions commenced by or against unincorporated labor organizations and that it has no applicability to the defendant corporation.

For the reason stated, we think there was not sufficient process to bring the defendant corporation before the court. Accordingly, the judgment is reversed and the cause must be and hereby is dismissed.